## BOARD OF EDUCATION OF THE CITY OF NEW HAVEN
### *v.* AFSCME, COUNCIL 4, LOCAL 287
### (11816)

HEALEY, PARSKEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued December 7, 1984—decision released February 19, 1985

*Lubbie Harper, Jr.,* for the appellant (plaintiff).

*Barbara J. Collins,* with whom, on the brief, were *J. William Gagne, Jr.,* and *W. Richard Smith, Jr.,* for the appellee (defendant).

DANNEHY, J. In this action, the plaintiff New Haven board of education (the board) appeals from the judgment of the Superior Court denying the board's application to vacate an arbitration award.

The record discloses the following facts. The defendant, Local 287 of Council 4, American Federation of State, County and Municipal Employees (the union), requested arbitration pursuant to article 13 of the collective bargaining agreement (the agreement) between the union and the board. In its grievance, the union alleged that one of its members, an assistant custodian (the employee), had been improperly discharged by the board in violation of the agreement.

The parties agreed on the following submission: "Did the Board of Education violate the collective bargaining agreement between the Union and the Board in terminating [the employee]? If so, what shall the remedy be?" Arbitration hearings were held on March 20, 1981, April 3, 1981, May 7, 1981, and June 9, 1981. The arbitration panel issued an award on January 19, 1982, finding that the board violated the agreement in the manner in which it terminated the employee.

In its written memorandum, the arbitration panel made the following findings upon which its decision was based. The incident precipitating the discharge occurred on November 13, 1980, at the Sheridan Middle School. The employee, apparently disgruntled over an adverse employment decision, verbally abused a fellow custodian and participated, at least to some extent, in the disruption of the custodian's office. Soon thereafter, the employee was served with a termination notice at his home. On November 24, 1980, the board unanimously voted to accept the recommendation of the superintendent of schools that the employee be discharged. It was the board's position that the discharge was based not only on the Sheridan School incident but on the employee's history of disruptive and abusive behavior.[1]

---

[1] The arbitration panel acknowledged that the employee had been involved in a number of disruptive incidents, two of which had resulted in suspensions.

Prior to the incident at the Sheridan Middle School, on November 5, 1980, a stipulated arbitration award was granted in a matter involving the board and the union but concerning a totally unrelated grievance. In the stipulated award, the board agreed not to deliver communications concerning disciplinary action to the homes of members of the union.[2] At the arbitration hearings held with regard to this appeal, that stipulated award was marked as an exhibit. Not only did the board acknowledge the validity of the stipulated award but it admitted its failure to comply with its terms.[3]

The arbitrators rendered an award on January 19, 1982, finding that the board violated the agreement in the manner in which it served notice of termination on the employee and directed that he be reinstated with seniority from the date of discharge but without back pay and other benefits.

The board, pursuant to General Statutes § 52-418, applied to the Superior Court to enter a judgment vacating the arbitration award claiming, inter alia, that (1) the award was not rendered within the time limits set by the parties' collective bargaining agreement, and (2) the arbitrators exceeded their authority in making the award. The trial court denied the application stating that the decision of the arbitration panel was timely, that the arbitrators did not exceed their authority in

---

[2] The stipulated award provided: "The parties requested that the following agreement between them be incorporated into an award from the State Board of Mediation and Arbitration.

"The New Haven Board of Education, its Board members, employees and agents, shall not personally visit or instruct people to visit, the homes of Ralph Solli, Jeffrey Miller, or other employees who are members of the bargaining unit represented by Local 287 of Council 4, AFSCME (AFL-CIO) for the purpose of communicating disciplinary action or the rescinding of such action. If such communication to the home is necessary, it shall be done through the U.S. Postal Service (certified mail) or by a telegram."

[3] Specifically, the board placed into evidence a letter from the superintendent of schools to the employee apologizing for having served the termination notice at the employee's home.

considering the stipulated award, and that they properly concluded that the board violated the agreement in the manner in which it served the termination notice. From that judgment, the board has appealed to this court, raising essentially the same claims.

We turn first to the board's claim that the award should have been vacated on the ground that the arbitrators failed to issue a timely award in contravention of article 13, section 7, of the agreement.

Arbitration is a creature of contract; if the parties choose to set limits on the arbitrators' powers, then the parties will be bound by those limits. *Connecticut Union of Telephone Workers* v. *SNET Co.*, 148 Conn. 192, 197, 169 A.2d 646 (1961). This court is not ordinarily concerned with the wisdom or desirability of a provision upon which the parties themselves have agreed.

The relevant time limits are set forth in article 13, section 7, of the parties' agreement which provides: "The Arbitrator shall be requested to render his award as quickly as possible, but in no event more than 30 calendar days from the filing of post hearing briefs, or 60 days after the final hearing, whichever is sooner, unless the parties agree otherwise."

The board argues that the time limited for rendering the award was exceeded because the date of the final hearing was June 9, 1981, the posthearing briefs were exchanged on September 4, 1981, and the award was not rendered until January 19, 1982, more than six months after the final hearing.

We agree with the trial court that the operative words in the agreement are "shall be requested to render his award." This language places no affirmative obligation on the arbitrator to act; rather the time limited begins to run upon the request of one or both of the parties. In this instance, there is no evidence that

a request was ever made. In fact, the board never objected until after the arbitrators rendered their decision. Because we find that the time limit set forth in the agreement never ran, and was therefore not exceeded, we need not decide whether the board's failure to object until after an adverse decision was rendered constituted a waiver of any objection as to the timeliness of the award.

The board next argues that the award should have been vacated because the arbitrators exceeded their powers in violation of General Statutes § 52-418[4] in considering the stipulated award to be a part of the agreement. The trial court found that the "arbitrators parenthetically stated that they considered [the stipulated award] to be an integral part of the Collective Bargaining Agreement between the Board and the Union." In support of the propriety of this finding, the trial court noted that the stipulated award was marked as an exhibit at the arbitration hearings and that the board acknowledged its existence and validity and exhibited a letter of apology to the employee for the way in which he was notified that his employment was terminated. Consequently, the trial court concluded that the arbitrators correctly determined that the board violated the agreement in the manner in which it served the termination notice. We disagree.

We have consistently stated that arbitration is the favored means of settling differences and arbitration awards are generally upheld unless an award clearly falls within the proscriptions of § 52-418 of the General Statutes. *Board of Education* v. *Bridgeport Edu-*

---

[4] That section provides in pertinent part: "[General Statutes] Sec. 52-418. VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds . . . the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

*cation Assn.*, 173 Conn. 287, 290, 377 A.2d 323 (1977); *International Union* v. *Fafnir Bearing Co.*, 151 Conn. 650, 653, 201 A.2d 656 (1964). "Every reasonable presumption and intendment will be made in favor of the award and of the arbitrators' acts and proceedings. Hence, the burden rests on the party attacking the award to produce evidence sufficient to invalidate it or avoid it." *Gary Excavating Co.* v. *North Haven*, 160 Conn. 411, 413, 279 A.2d 543 (1971).

The authority to arbitrate is strictly limited by the provisions of the collective bargaining agreement and the scope of the matter to be considered by the arbitrators is limited by the submission. *Board of Police Commissioners* v. *Maher*, 171 Conn. 613, 621, 370 A.2d 1076 (1976). The submission, then, defines the scope of the entire arbitration proceeding by specifically delineating the issue to be decided. *Naugatuck* v. *AFSCME*, 190 Conn. 323, 326, 460 A.2d 1285 (1983).

In deciding whether the arbitrators have exceeded their powers, this court, as a general rule, examines only the award to determine whether it is in conformity with the submission. The memorandum of the arbitrator is irrelevant. *Waterbury Construction Co.* v. *Board of Education*, 189 Conn. 560, 563, 457 A.2d 310 (1983). The memorandum of decision may, however, be examined to determine if an arbitrator has exceeded his or her authority by making an award beyond the scope of the submission. Id.

We look first to the provisions of the parties' agreement. The authority granted to an arbitrator is clearly set out in article 13, section 5, of the agreement. "The Arbitrator's jurisdiction to make an award shall be limited by the submission and confined to the interpretation or application of the provisions of [the] agreement. The Arbitrator shall not have jurisdiction to make an award which has the effect of amending, altering,

enlarging or ignoring the provisions of the Agreement in effect at the time of the occurrence of the grievance being arbitrated, nor shall the arbitrator have jurisdiction to determine that the parties by implication have amended or supplemented the agreement, unless the parties shall expressly submit to him the issue as to whether such an agreement by implication was made. Arbitrator shall confine his award to a decision that the Board or the Union has or has not violated a specific provision of this Agreement, and if such an award is in the affirmative, the award shall specify the remedy." This provision explicitly states that an arbitrator shall not make an award which has the effect of amending the parties' agreement nor shall the arbitrator determine that the parties by implication have supplemented their agreement unless that issue is expressly submitted by the parties for determination by the arbitrator.

We look next at the issue submitted by the parties to the arbitration panel: "Did the Board of Education violate the collective bargaining agreement between the Union and the Board in terminating [the employee]? If so, what shall the remedy be?" The issue submitted, then, was simply whether the agreement had been violated. No matter outside that submission may be included in the award. *New Britain Machine Co.* v. *Lodge 1021,* 143 Conn. 399, 404, 122 A.2d 786 (1956).

The trial court stated that the "arbitrators found that the Board had violated the Agreement in the manner in which it served the termination notice on [the employee]." There is, however, no provision in the agreement which addresses the issue of the manner in which a termination notice must be served. The trial court further stated that the arbitrators considered the stipulated award to be "an integral part" of the agreement and that in so doing, the arbitrators did not exceed their authority. It was the trial court's position that the board voluntarily agreed to be bound by the

terms of the stipulated award because the award had been marked as an exhibit at the full hearing and its validity acknowledged by the board. The board claims that the stipulated award was offered at the hearing as evidence only of the harrassment aspect of the union's grievance.

There is no question but that the award in this matter exceeded the scope of the submission. The stipulated award, which related to an entirely different grievance, was the sole basis upon which the arbitration panel found that the board violated the agreement. The arbitration panel's consideration of a document involved in a separate grievance had the effect of amending or altering the parties' agreement in direct conflict with article 13, section 5. If the union wanted the arbitrators to determine whether the stipulated award, by implication of the parties, amended the agreement, the proper course would have been to "expressly submit" that issue for consideration. This, however, was not done.

" '[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.' *United Steelworkers* v. *Enterprise Wheel & Car Corporation,* 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 [1960]." *Hudson Wire Co.* v. *Winsted Brass Workers Union,* 150 Conn. 546, 553, 191 A.2d 557 (1963). Here, the arbitration panel exceeded its authority by considering and basing its award on a document which was not a part of the parties' agreement. This court has no choice but to refuse enforcement of the award.

There is error, the judgment is set aside and the case is remanded with direction to vacate the award.

In this opinion HEALEY, SHEA and SANTANIELLO, Js., concurred.

PARSKEY, J., dissenting. The question submitted to the arbitrators was whether the New Haven Board of Education (board) violated the collective bargaining agreement between the board and Local 287 of Council 4, American Federation of State, County and Municipal Employees (union). The arbitrators answered this question in the affirmative and the trial court upheld their award. Because there is a basis in the record for upholding the award, the trial court's judgment should be affirmed.

I agree completely with the court's analysis of the proper judicial approach to arbitration, namely, that arbitration is the favored means of settling differences; *Board of Education* v. *Bridgeport Education Assn.,* 173 Conn. 287, 290, 377 A.2d 323 (1977); that every reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings; *Gary Excavating Co.* v. *North Haven,* 160 Conn. 411, 413, 279 A.2d 543 (1971); that the authority to arbitrate is strictly limited by the provisions of the collective bargaining agreement and the scope of the matter to be considered by the arbitrator is limited by the submission; *Board of Police Commissioners* v. *Maher,* 171 Conn. 613, 621, 370 A.2d 1076 (1976); and that ordinarily the memorandum of the arbitrator is irrelevant; *Waterbury Construction Co.* v. *Board of Education,* 189 Conn. 560, 563, 457 A.2d 310 (1983); *In re Curtis-Castle Arbitration,* 64 Conn. 501, 513, 30 A. 769 (1894); but that it may be examined to determine if the arbitrator has exceeded his authority. *Waterbury Construction Co.* v. *Board of Education,* supra. I part company with the majority when these principles are applied to the facts of this case.

Article 11 of the agreement covers disciplinary actions. Section 2 provides: "All disciplinary actions shall be applied in a fair manner and shall be consistent with nature of the infraction for which the disciplinary action is being applied." Section 3 lists a number of disciplinary actions ranging from a verbal warning to discharge and provides that any disciplinary action shall be consistent with section 2. These sections deal with the "what" and the "how" of disciplinary actions. Under these sections, not only must the penalty fit the nature of the infraction, but it must also be put into effect in a fair manner. The question before the arbitrators was not only whether the specific penalty, namely, discharge, was appropriate, but also whether notifying the grievant of his discharge in person at his home violated section 2. By their award the arbitrators found that, even if discharge of the grievant employee was justified, the manner in which he was notified was unfair and therefore such action violated the agreement.

The fact that a particular penalty is justified does not mean that the employer is free to impose the penalty in any way that it chooses. The purpose of provisions such as section 2 is to permit an employee to retain his self-esteem by protecting him from vexation and embarrassment other than what is implicit in the penalty itself. For example, the fact that an employee may justifiably be discharged does not mean that the employer may elect to "drum him out of the corps" at a public assembly. At the very least, if such action were taken, an arbitrator could find that it violated section 2. Similarly, in this case, the parties by their earlier stipulated award acknowledged that notification of disciplinary action in person at an employee's home was inappropriate. Even though the award related to another case, the significance of the action is that it amounted to a recognition by the parties that notifica-

tion in person at an employee's home constituted an unfair disciplinary practice. This inference is bolstered by the fact that, in this very case, the board acknowledged that it engaged in this practice and apologized to the grievant employee for having done so.

The fact that the arbitrators viewed the stipulated award as an amendment to the collective bargaining agreement in no way affects the result. We have upheld judgments of the trial court that have arrived at the right result for the wrong reasons. *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978). We should do no less with respect to the award of an arbitrator. I would affirm.