[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO CONFIRM ARBITRATION AWARD
Pursuant to General Statutes sections 52-418, 52-420
and 38-175, the defendant American Universal Insurance Company ("American") seeks to vacate the arbitration award of $78,000, $46,500 of which is to be paid by American as underinsured motorist coverage. The plaintiff, Debra Buell ("Buell") seeks to confirm the arbitration award pursuant to General Statutes 52-417 and seeks statutory interest pursuant to section 37-3a.
On April 9, 1986 at about 7:10 a.m., Debra Buell stopped her vehicle at a traffic light on Route 1 in East Haven. She was accompanied by a passenger, Ms. Nivens. Joan Lozier stopped her vehicle behind Buell's vehicle. While both vehicles were waiting for the light to turn green, a third vehicle, owned by Michael Vorio and driven by Patricia Vorio struck the Lozier vehicle in the near and pushed it into the Buell vehicle. The Buell vehicle was moved twenty feet into the intersection. As a result of the accident, Buell sustained back and neck injuries and was out of work from April 9 to September 11, 1986. Buell filed claims against both Joan Lozier and Patricia Vorio in which she alleged that lone and Vorio were negligent.
The following facts were stipulated:
 1. Patricia Vorio was insured by Aetna and had $50,000 single limit liability coverage.
2. This coverage has been exhausted. CT Page 8624
 3. of this coverage Debra Buell received $29,000.
 4. Joan Lozier was insured for $100,000 liability coverage with American Universal.
5. This coverage was not exhausted.
 6. Debra suell received $2,500 from the coverage of Joan Lozier.
 7. American Universal insured Debra Buell for underinsured motorist coverage on two vehicles.
 8. Each of these vehicles had, underinsured motorist coverage of $50/100,000.
Ms. Nivens, the passenger, received $21,000 from Vorios insurer, Aetna, and $3,000 in settlement from Joan Lozier's American Universal policy. Defendant American denied coverage on the basis that all applicable bodily injury policies were not exhausted. The dispute was submitted to arbitration pursuant to the policy and General Statutes 38-175c. The arbitration panel, by a two to one vote, found that there was coverage.
Specifically, the majority of the arbitration panel found that Buell is entitled to recover damages from American in the amount of $46,500 based on the following conclusions:
 1. The negligence of Patricia Vorio was a proximate cause of the accident.
 2. The accident was a proximate cause of the injuries and losses set forth in Section B of this finding.
 3. No credible evidence was introduced that Joan Lozier was in any way negligent in this accident.
 4. The insurance coverage of Joan Lozier was not an applicable bodily injury policy.
 5. Under the language of the Connecticut Endorsement as set forth in CT Page 8625 finding C. 5. in which the limit of liability shall be reduced by all sums paid because of the bodily injury, the respondent is entitled to a credit of $29,000, being the amount paid to Buell under the liability coverage. (underscoring supplied)
 6. Under the language of the Connecticut Endorsement as set forth in finding C. 5., which prohibits duplicate payments, the respondent is also entitled to a credit of $2,500 for the money Buell received from the coverage on Joan Lozier.
 7. The fair value of the claim of Debra Buell is $78,000.
The dissenting arbitrator found that the $100,000 liability coverage of Joan Lozier was not exhausted and thus no underinsured motorist coverage was available, as Buell failed to exhaust all applicable policies. The dissenting arbitrator also found that the valuation of $78,000 in damages was excessive and that the setoffs should also include payments made to Nivens under the applicable policies. The dissent also noted additional facts from the hearing that should be considered such as the fact that Buell was advised by her doctor to return to work on July 3, 1986. Buell worked one day in July and then did not work again until September 11, 1986. During this period she acknowledged that she remained very busy at home caring for her five young children. Also, Buell testified that she lived with an abusive husband who beat her two or three times per week. "While all of the arbitrators can feel great sympathy for Ms. Buell's marital problems, this should not be the basis for an excessive award." Scope of Review for Compulsory Arbitration
"[V]oluntary arbitration and compulsory arbitration are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations, if compelled by government, must accord with procedural and substantive due process." American Universal, Inc. Co. v. DelGreco, 205 Conn. 178, 187,530 A.2d 171 1987). Compulsory arbitration calls for a higher level of judicial review. Id. at 188.
General Statutes 38-175c(a)(1)(B) provides in CT Page 8626 relevant part that "[e]very. . .[liability] policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding." "[W]here judicial review of compulsory arbitration proceedings required by 38-175c(a(1) is undertaken under General Statutes 55-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." DelGreco, supra, 191; see also Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646,655 n. 11, 591 A.2d 101 (1991) Streitweiser v. Middlesex Mutual Ins. Co., 219 Conn. 371, 375, 593 A.2d 498 (1991). Scope of Review for factual Findings
Because uninsured motorist coverage disputes arise within the context of the extensively regulated automobile liability insurance business, it is constitutionally appropriate to treat factual findings made by arbitrators under Section 38-175c as analogous to those made in the course of contested administrative proceedings under the UAPA. Chmielewski, supra, 666. (Citations omitted). Therefore, where questions of fact which are not stipulated to by the parties are determined by arbitrators in a compulsory arbitration proceeding, the appropriate standard of judicial review of the arbitrators' factual findings is the substantial evidence test. Id. at 660. "[E]xcept in special circumstances. . .a party does not have the right to introduce evidence in the reviewing court in connection with that review." Id. at 656.
The substantial evidence test for judicial review of factual findings provides as follows: "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the administrative agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." Id. at 660-61 n. 15 quoting Connecticut Light Power Co. v. DPUC, 216 Conn. 627, 639, 583 A.2d 906
(1990)). "Substantial evidence will be found to exit if the administrative record supplies a substantial basis of fact from which the court reasonably can infer the fact in issue. Id. at 661.
In order to ensure the integrity of the factfinding process, the following safeguards surrounding the arbitration process must be used:
 A record must be made and preserved for the trial court use in undertaking the review process. The arbitrators must be CT Page 8627 sworn to perform their task faithfully, they must render their decision in a timely manner, and their decision will not stand if it is the product of fraud, corruption, partiality or other misconduct, or if it exceeds their powers. See General Statutes Sections 52-414 through 52-418.
Id. at 647.
Scope of Review for Awarding Interest
"[A] trial court has discretion, under General Statutes Section 37-3a, to award prejudgment interest on an arbitration award retroactively to some date prior to the date of the trial court's judgment affirming the award." Middlesex. Mutual Assurance Co. v. Walsh, 218 Conn. 681, 701,590 A.2d 957 (1991); Chmielewski, supra, 675-76. Implicit in that determination is the conclusion that the prior date may be the date of the arbitration award. The relevant question under Section 37-3a is whether the money was wrongfully withheld, and the ultimate determination "`is one to be made in view of the demands of justice rather than through the application of any arbitrary rule.'" Walsh, supra, 702, (quoting Cecio Bros. Inc. v. Feldman, 161 Conn. 265, 275,287 A.2d 374 (1971)). The trial court's award of interest; will not be overruled absent a clear abuse of discretion. Metcalfe v. Talarski, 213 Conn. 145, 160, 567 A.2d 1148
(1989).
The defendant seeks to vacate the arbitration panel's award on the grounds: (1) that all applicable policies have not been exhausted pursuant to the contract of insurance, General Statutes section 38-175c, and the decisional law of the state; (2) that the award should be additionally setoff by the amount awarded to the passenger, Ms. Nivens; (3) that the award of $78,000 was erroneous; and (4) that the arbitrators exceeded their answers under the contract, the parties' submission and General Statutes section 52-420. (See Application to Vacate Arbitration Award dated August 2, 1991). The plaintiff was submitted a memorandum of law in support of application confirm the arbitration award. Whether the Plaintiff has Exhausted all Applicable
 Policies such that She is Entitled to Underinsured Motorist Benefits
Pursuant to General Statutes section 38-175c(b)(1), "[a]n insurance company shall be obligated to make payment to CT Page 8628 its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements. . . ." (emphasis added). A similar provision in the uninsured motorist coverage portion of the policy states that: "We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payments of judgments or settlements." (emphasis added)
The defendant American contends that because the plaintiff Buell settled with Lozier for $2500, the liability limits under that policy have not been exhausted and thus Buell is not entitled to underinsured motorist benefits under the defendant American's policy. The plaintiff Buell counters that the only applicable policy is the tortfeasor Vorio's policy and because these limits have been exhausted, Buell is entitled to underinsured motor benefits from the defendant. Both the plaintiff and the defendant cite Continental Ins. Co. v. Cebe-Habersky, 214 Conn. 209,571 A.2d 104 (1990) in support of their arguments.
In Cebe-Habersky, the court found that a claimant's access to underinsured motorist insurance first requires the payment of the limits of the liability policy insuring the person responsible for the accident. Id., 210. (emphasis added) In DelGreco, the court reviewed the legislative history and purpose of General Statutes section 38-175c:
 In commenting on Public Acts 1979, No. 79-235, Representative Silvio Mastrianni explained that "[a]n uninsured vehicle is generally defined as a vehicle to which no bodily injury bond or policy applies at the time of the accident. . . . Mr. Speaker, this bill requires coverage be provided against the underinsured motorist. It also requires [the] insurance company of an innocent driver to pay up to the full amount of the uninsured motorist coverage when the at fault drivers insurance has been exhausted and a deficiency remains." (Emphasis added.) 22 H.R. Proc., Pt. 16, 1979 Sess., p. 5341. Senator James J. Murphy, Jr., in remarking on the same bill, stated: "[w]hat this bill does is require that hereafter, when one has purchased uninsured motorist coverage, CT Page 8629 that if that coverage exceeds any insurance coverage which a responsible party has in causing injuries, that once the liability insurance of the so-called responsible or negligent party has been exhausted, is there is additional coverage under one's uninsured motorist's plan, then payment under that program would be triggered and allow for the greater recovery of the insured. . . ." (Emphasis added.) 22 S. Proc., Pt. 5, 1979 Sess., p. 1354.[8] These comments indicate a legislative intent that underlined motorist coverage is triggered when the tortfeasor's automobile liability coverage is exhausted.
The court in DelGreco also looked to Connecticut Insurance Regulation 38-175a-6(d) in determining that the insurance carrier was not entitled to a credit for payment of $20,000 by a dram shop carrier to its insured. "The regulation states that an insurance `policy may provide for the reduction of the insurer's liability to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury. . . .'" Id., 197. (emphasis in the original).
In the instant case, the majority of the arbitrators concluded on the issue of liability that the negligence of Vorio was the proximate cause of the accident and that no credible evidence was introduced that Lozier was in any way negligent. Therefore, Lozier's insurance coverage was not an applicable bodily injury policy. Thus, the defendant's argument that all applicable policies were not exhausted is unavailing. The tortfeasor Vorio's policy was the only applicable policy at the time of the accident as she was found by the majority of the panel arbitrators to be the person responsible for the injury. The plaintiff Buell is entitled to underinsured motorist coverage from defendant American.
Whether the award to the Plaintiff should also be offset by the Amount Paid to the Injured Passenger
The majority arbitrators setoff the plaintiff's 78,000 claim by 31,500; 29,000 received from Vorio's policy and 2,500 received from Lozier's policy. On that basis, Buell is, therefore, entitled to recover damages in the amount of 46,500. The defendant, citing American Motorists Ins. Co. v. Gould, 213 Conn. 178, 185, 530 A.2d 171 (1987), contends that CT Page 8630 this amount should be further offset by the amount paid to the injured passenger Nivens (21,000 from Vorio's policy and 3,000 received from Lozier). The plaintiff argues that Gould is not controlling here because the sole issue reached in Gould was whether the tortfeasor was "underinsured" as the term is defined by General Statutes section 38-175c(b)(2) and not whether the Uninsured Motorist Coverage (UMC) carrier was entitled to a setoff equal to the sums paid to the other victims. The plaintiff argues that Gould is further distinguishable from their case because in Gould, the court dealt with a one car accident and the same policy under which the claimant sought UMC benefits also provided the primary liability coverage. In the instant case, there was a three car accident and the liability insurers and UMC carrier are different companies. It is the plaintiff's position, therefore, that the 21,000 and 3,000 paid to Nivens may not be setoff against the amount awarded to the plaintiff. Amount allowable as a setoff
In Gould, although it `was held' the claimant was not eligible for underinsured coverage, the court went on to state in dicta that "all sums" paid out by virtue of the tortfeasor liability coverage included payments made to other accident victims. Id. at 637. The court reasoned that an insurance policy provision which reduced uninsured motorist limits by payments made in behalf of the tortfeasor, specifically including "all sums" paid under the liability portion of the policy, was "not affected by the provision [Section 38-175a-6(d)(3) of the Regulations of Connecticut Agencies] reducing liability limits by amounts paid as uninsured motorist insurance." Id. In support of their decision, the court noted that regulation 38-175a-6(d)(3) did not "specifically address whether the "reduction of limit," by virtue of payment made in settlement of a liability claim refers to the total paid to all victim of the accident or only to the amount paid each victim." Id. at 636. Section 38-175a-6(d)(3) of the regulations provides for the reduction of limits to the extent that damages have been:
 paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the companies obligation under the bodily injury liability coverage to the extent of the payment.
CT Page 8631
(emphasis added).
The court went on to state that because the provision reducing uninsured motorist limits for sums paid as liability insurance was clear and not affected by the provision reducing liability limits by amounts paid as uninjured motorist insurance, the principle that ambiguities in a policy should be resolve in favor of an insured was not appropriate. Id. at 637.
In the case at hand, the "Limit of Liability" provisions of the insured's uninsured motorist coverage (See Plaintiffs' Exhibit A, p. 5) includes language of limitation similar to regulation Section 38-175a-6(d)(3) and the language of the policy at issue in Gould. Section of the "Limit of Liability" portion of the plaintiff' UMC coverage provides that "[a]ny amount otherwise payable for damage under this coverage shall be reduced by all sums. . .paid because or the "bodily injury" by or on behalf of persons or organizations who may be legally responsible." (emphasis added). Section C provides that "[a]ny payment under this coverage will reduce any amount that a person is entitled to recover for the same damages under Part A." Because regulation 38-175a-6(d)(3) does not specify in what manner payments made to victims will reduce the amount payable by the UMC carrier to the insured, and the language of the insured's policy reducing uninsured motorist limits by sums paid as disability insurance is clear and in compliance with the above regulation, the $21,000 paid to the victim, Nivens, on behalf of the party legally responsible for the injury, should be deducted from the amount payable to the plaintiff. Amount Not Allowable as a Setoff
In DelGreco, the court held that the UMC carrier was not entitled to a credit for payment by a dram shop carrier to its insured. Supra. The court reasoned that the provisions of Section 38-175a-6(d) apply only to the person "responsible for the injury" to the insured. Id. at 197. The court found that the dram shop was not a "person responsible for the injury."
The court concluded that the regulation when read in conjunction with General Statutes section 38-175c, related only to setoffs of amounts received from other automobile policies of those "responsible for the injury." Id.
The DelGreco case requires two factors to be present in order to allow a credit or setoff to the UMC carrier. First, the payment must be made by a person responsible for CT Page 8632 the injury or on his behalf and second, the payment must be made by the automobile liability carrier of the person responsible for the injury. Id. (emphasis added).
Thus, two conditions must be met before a credit or setoff may be allowed. As discussed earlier, the majority of the arbitrators concluded that the negligence of Vorio was the proximate cause of the accident and that no credible evidence was introduced that Lozier was in any way negligent. Thus, based on the findings of the majority of the arbitrators the $3,000 payment made by Lozier's liability carrier to Nivens was not paid on behalf of a "person responsible for the injury", and therefore, does not meet either condition required for a setoff under DelGreco. Whether the factual findings upon which the plaintiff's award is based are supported by substantial evidence such that the plaintiff's award should not be disturbed.
The plaintiff argues that the panel majority, upon careful consideration of the evidence, concluded that the fair value of the claim of Debra Buell was $78,000. The plaintiff contends that the above determination was based on detailed findings concerning the nature of Debra Buell's injuries and permanent disability, special medical expenses, lost wages, and the daily limitations encountered by her as a result of the accident. The plaintiff cites the Findings and Awards at B.1 through B.15 in support of their position. The defendants contend that the award was excessive in light of the facts of this case. In their application to vacate the arbitration award, the defendants cite to the opinion of the dissenting arbitrator which posits, among other things, that the award to Debra Buell was excessive. The arbitrator, in her dissent, contends that there are additional facts from the hearing which demonstrate that the award was excessive and unsubstantiated. The defendant submitted no other documentation or records from the arbitration proceedings.
"Every reasonable presumption and intendment will be made in favor of the award and of the arbitrators' acts and proceedings. Hence, the burden rests on the party attacking the award to produce evidence sufficient to invalidate it or avoid it." Board of Education v. AFSCME, 195 Conn. 266, 271, 487 A.2d 553 (1985) (quoting Gray Excavating Co. v. New Haven, 160 Conn. 411, 413,219 A.2d 543 (1971). In Chmielewski, the court construed General Statutes section "38-175c to incorporate a requirement that a record of the arbitration proceedings be preserved and made available to the court in connection with any such review." Supra, 661. The defendant, by submitting only a copy of the dissenting arbitrator's opinion to the court, has not produced evidence sufficient to invalidate the arbitration award. Although the defendant contends that the award is excessive, that position is CT Page 8633 not supported by documentary evidence or transcripts from the arbitration proceedings as required by Chmielewski. The opinion of the dissenting arbitrator alone falls short of the evidence required to invalidate the factual findings of the panel majority. Accordingly, because the factual findings upon which the plaintiff's award is based, in light of all the evidence submitted to the court, are supported by substantial evidence, the award of $78,000 will not be overturned.
Based on the foregoing, the plaintiff's application to confirm the award is granted.
The fair value of the plaintiff's claim is $78,000 as determined by the panel majority. This sum must be setoff by $9,000 and $21,000, the amounts paid respectively to the plaintiff and the passenger, Nivens. These amounts total all sums paid on behalf of Patricia Vorio, the party found by the panel majority to be responsible for the injuries incurred. The total award which the plaintiff may recover from American is, therefore, $28,000. The remaining $3,000 paid to Nivens on behalf of Lozier will not be setoff against the plaintiff's award as it was not a payment made by or on behalf of the party responsible for the injuries.
The court exercises its discretion to award interest at the statutory rate from the date of the arbitration award to the date of this judgment.
BARRY R. SCHALLER, JUDGE