HURLEY, J.
 

 The present case is before the court on the application by the plaintiffs, the Southeastern Connecticut Regional Resources Recovery Authority (Southeastern Recovery) and the Connecticut Resources Recovery Authority (Connecticut Recovery), to vacate an arbitration award in favor of the defendant, the American Ref-Fuel Company of Southeastern Connecticut (American). Connecticut Recovery is a subdivision of the state of Connecticut, with the responsibility of financing and developing facilities for the processing and disposal of municipal solid waste. Southeastern
 
 *485
 
 Recovery is also a subdivision of the state of Connecticut, with the responsibility of providing for the disposal of solid waste for its member municipalities, which include East Lyme, Griswold, Groton, Ledyard, Mont-ville, New London, North Stonington, Norwich, Preston, Sprague, Stonington and Waterford. American is the company that constructed and operates the waste-to-energy facility (facility) in Preston.
 

 The plaintiffs
 
 [1]
 
 allege that Connecticut Recovery and American entered into a service agreement in December, 1987, under which American agreed to construct and operate the facility to provide waste processing services and that Connecticut Recovery agreed to issue bonds to finance the facility and to pay American a service fee for its costs and services. Under the bridge and management agreement, a separate contract between Southeastern Recovery and Connecticut Recovery, Southeastern Recovery agreed to deliver waste from its member municipalities to the facility and to pay the costs incurred by Connecticut Recovery under its service agreement with American. The payable costs are collected by Southeastern Recovery from its member municipalities under separate waste management agreements. The service fees payable to American from Connecticut Recovery are based on an estimated formula in the parties’ agreement and are payable on a monthly basis. Pursuant to the service agreement, all revenues generated by American are to be placed in the hands of a trustee. These revenues include all payments due from Connecticut Recovery, electric revenues from the Connecticut Light and Power Company and merchant waste tipping fees for waste delivered by customers of American. At the end of each contract year, which runs from July 1, to June 30, an annual reconciliation is conducted that compares the actual
 
 *486
 
 service fees due for the year under the contract with the actual service fees paid by Connecticut Recovery.
 

 American prepared the annual reconciliation following the 1993-94 contract year, and a dispute arose between the parties as to the amount of the reconciliation sum due from Connecticut Recovery and as to the calculation of the interest due on previous service fee underpayments. Pursuant to § 9.06 (a) of the service agreement, the parties agreed to submit their dispute to an independent third party (arbitrator) for binding arbitration. The arbitrator rendered a final decision on August 25, 1995. The arbitrator found that $3,062,256 was a reasonable and appropriate reconciliation sum for the contract year 1994, less credits for payments made in 1995, and that $283,253 was a reasonable and appropriate calculation of interest for service fee underpayments in the 1992, 1993 and 1994 contract years. The arbitrator’s final calculation awarded American a total of $2,523,469.89.
 

 On September 14,1995, the plaintiffs filed the present application to vacate the arbitration award. The plaintiffs filed a brief in support of their motion on October 24,1995. American filed an opposing brief on November 7, 1995, which was followed by a reply brief from the plaintiffs on November 14, 1995.
 

 “Every reasonable presumption and intendment will be made in favor of the award and of the arbitrators’ acts and proceedings.” (Internal quotation marks omitted.)
 
 Board of Education
 
 v.
 
 AFSCME,
 
 195 Conn. 266, 271, 487 A.2d 553 (1985). “When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties’ agreement. . . . When the scope of the submission award is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission.” (Citation
 
 *487
 
 omitted.)
 
 Garrity
 
 v.
 
 McCaskey,
 
 223 Conn. 1, 4, 612 A.2d 742 (1992). Where “the parties voluntarily bargained for the decision of the arbitrator . . . [they] are presumed to have assumed the risks of and waived objections to that decision.” (Internal quotation marks omitted.)
 
 Bodner v. United Services Automobile Assn.,
 
 222 Conn. 480, 487, 610 A.2d 1212 (1992).
 

 “ ‘[T]he submission defines the scope of the entire arbitration proceedings by specifically delineating the issues to be decided and no matter outside the submission may be included in the award.’ ”
 
 International Assn. of Fire Fighters, Local 1339, AFL-CIO
 
 v.
 
 Waterbury,
 
 35 Conn. App. 775, 780, 647 A.2d 361 (1994). “In determining whether a submission is unrestricted we look at the authority of the arbitrator. The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of the issues, reserving explicit rights, or conditioning the award on court review.” (Internal quotation marks omitted.) Id., 778, quoting
 
 Garrity
 
 v.
 
 McCaskey,
 
 supra, 223 Conn. 4-5.
 

 In the present case, the issues specifically submitted to the arbitrator were: (1) what is the correct amount due American from Connecticut Recovery as a result of the annual reconciliation for contract year 1994; and (2) what is the interest sum owed to American by Connecticut Recovery for any underpayments of budgeted service fees for contract years 1992, 1993 and 1994. Section 9.06 (c) of the service agreement between the parties provides in relevant part that: “Any decision of the [arbitrator] shall be determined by or pursuant to the terms of this Service Agreement. The [arbitrator] may seek the advice of engineering, legal, financial or accounting experts . . . and shall have the power to gather and consider evidence, independent of any evidence submitted by the parties . . . .” The court finds, therefore, that the submission in the present case was unrestricted.
 

 
 *488
 
 Even where the submission is unrestricted, however, the arbitrator’s authority is not wholly without boundaries. Our Supreme Court has recognized “three grounds for vacating an [unrestricted] award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy ... or (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418.”
 
 Garrity
 
 v.
 
 McCaskey,
 
 supra, 223 Conn. 6.
 

 The plaintiffs first argue that the award should be vacated on the grounds that the arbitrator violated § 52-418 (a) (4) in that “the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.” General Statutes § 52-418 (a) (4). The plaintiffs base this argument on the grounds that the arbitrator (1) found that the eighth day of each month was the date from which interest on service fee underpayments was calculated, where the service agreement does not provide any particular date for payment, (2) awarded nonservice fee items to American in its calculation of the annual reconciliation, and (3) found that service fee payments were not actually “paid” under § 6.02 of the service agreement until the trustee actually disbursed them to American, as opposed to when Connecticut Recovery deposited them with the trustee. The plaintiffs claim that all of these findings are inconsistent with the service agreement and, therefore, exceed the submission.
 

 Even where the submission is unrestricted, there are certain circumstances where the court will engage in a broader review than merely comparing the award to the submission.
 
 Board of Education
 
 v.
 
 Local 818,
 
 5 Conn. App. 636, 640, 502 A.2d 426 (1985). “Where one party claims that the award, as issued, is inherently inconsistent with the underlying [contract in violation
 
 *489
 
 of § 52-418 (a) (4)], the court will compare the agreement with the award to determine whether the arbitrator has ignored his obligation to interpret and apply that agreement as written. ... It must be emphasized, however, that merely claiming inconsistency between the agreement and the award will not trigger judicial examination of the merits of the arbitration award. Rather, in the face of such a claimed inconsistency, this court will review the award only to determine whether it draws its essence from the [contract].” (Citations omitted; internal quotation marks omitted.) Id. The claims raised by the plaintiffs warrant this broader review. Id.
 

 In support of their first claim, the plaintiffs argue that the arbitrator exceeded his authority by relying on the “history” of the parties’ course of performance instead of the terms of the service agreement in deciding that interest began to accrue on service fee underpayments on the eighth of each month. The plaintiffs’ argument is unpersuasive.
 

 Course of performance has long been considered to be an integral part of interpreting a contract.
 
 Bray
 
 v.
 
 Loomer,
 
 61 Conn. 456, 464, 23 A. 831 (1892). The plaintiffs’ reliance
 
 on Board of Educations. AFSCME,
 
 supra, 195 Conn. 266, is misplaced. In that case, though the submission limited the arbitrators to interpreting and applying the contract, the arbitrators relied on an extrinsic document to infer a term into the parties’ contract that did not exist. Id., 272-73. The present case is also distinguishable from
 
 International Assn. of Fire Fighters, Local 1339, AFL-CIO v. Waterbury,
 
 supra, 35 Conn. App. 780, because the arbitrators in that case based their decision on “extenuating circumstances,” where the submission required the decision to be based on the interpretation and application of the collective bargaining agreement.
 

 
 *490
 
 In the present case, § 1.01 of the service agreement states that “ ‘Billing Period’ means each calendar month . . . .” The arbitrator in the present case merely used the evidence presented to him as an aid to construing a term that does in fact exist in the service agreement. In order to calculate the interest due for late service fee payments, it is fundamental that the arbitrator would first have to determine what date those payments were “due” under the service agreement. It follows that the arbitrator in the present case did not exceed his authority.
 
 Board of Education
 
 v.
 
 Local 818,
 
 supra, 5 Conn. App. 639-40. The plaintiffs’ mere disagreement with the arbitrator’s interpretation of the service agreement is not grounds for this court to reexamine the merits of the arbitrator’s decision.
 
 Garrity
 
 v.
 
 McCaskey,
 
 supra, 223 Conn. 4.
 

 The plaintiffs’ second and third claims are no more than assertions that the arbitrator incorrectly interpreted and applied the contract. The findings of the arbitrator indicate that he considered all of the evidence submitted and calculated the amounts due to American according to his interpretation of the contract in light of that evidence. This court must presume the correctness of the arbitrator’s actions.
 
 Board of Education
 
 v.
 
 AFSCME,
 
 supra, 195 Conn. 271. If the arbitrator did, in fact, make a mistake, the plaintiffs assumed that risk by agreeing to submit the dispute to arbitration.
 
 Bodner
 
 v.
 
 United Services Automobile Assn.,
 
 supra, 222 Conn. 487.
 

 The plaintiffs argue that the arbitrator’s finding that the service fees deposited with the trustee were not “paid” until the trustee actually disbursed them to American constituted a manifest disregard for the law. The plaintiffs argue that it is a universal principal of law that payment to a principal’s designated agent also constitutes constructive payment to the principal. The arbitrator states that his finding is based on application
 
 *491
 
 of the law, the evidence submitted by the parties and the parties’ agreement.
 

 A manifest disregard for the law is one of the two common-law grounds to vacate an award resulting from an unrestricted submission to an arbitrator.
 
 Garrity
 
 v.
 
 McCaskey,
 
 supra, 223 Conn. 10. However, this “ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator’s extraordinary lack of fidelity to established legal principles. ” Id.
 

 The arbitrator in the present case could well have found that, based on the evidence, the parties had agreed that payment would not occur until American actually received the funds from the trustee. The court is aware of no statute or ruling that would prohibit such an agreement nor have the plaintiffs produced any evidence of such. Id. “[A]s long as the contract does not violate any law or public policy. It is established well beyond the need for citation that parties are free to contract for whatever terms on which they may agree.” (Internal quotation marks omitted.)
 
 CMG Realty of Connecticut, Inc.
 
 v.
 
 Colonnade One Ltd. Partnership,
 
 36 Conn. App. 653, 660-61, 653 A.2d 207 (1995). The manifest disregard for the law exception is not, therefore, applicable to the present case.
 
 Garrity
 
 v.
 
 McCaskey,
 
 supra, 223 Conn. 6-7.
 

 The plaintiffs final argument is that the arbitrator understated the actual underpayments made by Connecticut Recovery during the 1993-94 contract year by $829,000, that Connecticut Recovery will thereby be required to duplicate these payments, and that the burden of paying these duplicate costs will eventually be passed on to Southeastern Recovery and its member municipalities. The plaintiffs argue that placing this unbargained for burden on the municipalities violates public policy.
 

 
 *492
 
 The plaintiffs have done no more than couch a claim that the arbitrator made an erroneous calculation in terms of a public policy argument. First, even if the arbitrator did make a mistake in his calculations, the plaintiffs assumed the risk.
 
 Bodner
 
 v.
 
 United Services Automobile Assn.,
 
 supra, 222 Conn. 487. Second, “[t]he public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy.”
 
 Garrity
 
 v.
 
 McCaskey,
 
 supra, 223 Conn. 7. The award is clearly not illegal. Further, it is this court’s impression that the argument merely that the costs might be unexpected does not fall within the standard of “strong public policy.” Id. The public policy exception, therefore, is also inapplicable to the present case. Id.
 

 On the basis of the foregoing, the plaintiffs’ application to vacate is denied.
 

 [1]
 

 References to Southeastern Recovery and Connecticut Recovery collectively are to the '‘plaintiffs."