[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTIONS TO CONFIRM AND VACATE ARBITRATION
 Facts
This case arises out of the non-renewal of a teacher's contract in her second year of employment at Sacred Heart High School (the School) in Waterbury, Connecticut. The grievant, Ms. Cindi Lombardo, (Ms. Lombardo) began her employment at the School in the fall of 1996 as a probationary and the newest guidance counselor. Ms. Lombardo completed her first year and was returned for her second year of probationary employment for the 1997-1998 school year. Due to budgetary concerns two positions were eliminated by the School one being a guidance counselor position, effective for the 1998-1999 school year. As the newest member of the guidance staff, Ms. Lombardo was affected by that decision. On February 27, 1998, the School sent Ms. Lombardo a letter that stated "Under the proposed budget for the school year 1998-1999 your present Guidance position is being eliminated, and therefore your contract will not be renewed. . . ."
The Office of Catholic Schools Archdiocese of Hartford (School Office) and the Sacred Heart Teachers Association ("Union") are parties to a collective bargaining agreement, effective July 1, 1997 through June 30, 2000.
The layoffs were precipitated by budgetary considerations but were made in the face of new hires, the creation of new full time positions, and the addition of newly created courses to provide full time employment for teachers who would otherwise have been reduced to part time. In addition there was evidence that the School was in debt over $500,000 and subject to net losses in prior years. When she was hired she agreed to obtain a Connecticut state certification in guidance; a certification significant to the school's continuing accreditation. Before she was hired, the guidance department had lost a full time guidance counselor due to resignation. There remained one other full time guidance counselor. Carol Reilly, (Reilly) who was also the Director of Guidance, and two part time guidance counselors, Carolyn Acter, (Acter) who also taught Italian, and Father Gorman (Gorman) who worked part time in the department. Lombardo was hired to fill the full time position resulting from the resignation.
She completed all of the course work incident to obtaining state certification in guidance by the end of the 1997-1998 school year but had still to complete an eight-month practicum as an active guidance counselor to obtain the certification. CT Page 1240
In the initial budget considerations in early January 1998 for operating the School for the academic year 1998-1999, there were no expectations of any professional staff lay-offs.
A grievance was filed pertaining to this matter on May 2, 1998. The grievance, which originally involved two teachers, stated in relevant part:
 And whereas, Mrs. Cyndi Lombardo is in the final (fieldwork) stage of completing her program for guidance certification, and Sacred Heart has, at the present time, no equally qualified personnel to replace her.
 And whereas Mrs. Lombardo offered to teach theology to fill out a part-time schedule, and was told that she is ineligible because she is not certified in theology, a certification not available in the State of Connecticut and not held by either of the less senior teachers assigned to fill those positions.
PROVISION(S) OF AGREEMENT CLAIMED TO BE INVOLVED:
 According to Policy 1-A-4 (Seniority) on page 27 of the current contract, tenured teachers may prevail over non-tenured teachers within a department only if all other factors except salary are equal. The other factors which are to be considered in staff reduction are academic qualifications, degree status, and professional evaluation. The Sacred Heart Teachers' Association contends that according to Article XII-A-1 on page 21 of the SHTA Agreement, these teachers have been subjected to arbitrary, capricious, and discriminatory practice in the execution of the current RIF.
The grievance was processed in accordance with the grievance provision of the collective bargaining agreement. Agreement between the Schools and the Union apparently covers the period July 1, 1997 to June 30, 2000. The grievance went first to the principal who denied it, and then to the superintendent of schools who also denied the grievance. In that situation the Agreement calls for a meeting to be held. It became apparent that the Union did not consider that meeting to be the one required by the contract, it did not demand that such a hearing be held, but rather took the case to arbitration. The School Office offered to hold such a hearing but also indicated that it would not raise any issues about the lack of such a hearing in arbitration. CT Page 1241
The Union submitted the grievance to arbitration. The School Office never submitted any issue of arbitrability for arbitration.
At the first hearing on February 18, 1999 the plaintiffs in this matter claimed that the submission was not subject to arbitration. The Union argued simply "Policy I is arbitrable." Policy I is a provision in the contract that sets forth criteria to be used in a lay-off situation. After conducting hearings, the arbitrator issued a decision in regard to arbitrability indicating that the matter was arbitrable. The decision stated in relevant part:
 Policy I is a provision of the Agreement, applies to a non-tenured teacher such as the grievant, and addresses the limited situation concerning non-renewal of a teacher's tenure or Initial Contract due to position elimination. The matter is arbitrable.
 The arbitrator finds a distinction between terminating a teacher's contract (as set forth in the Teacher's Initial Contract) and eliminating a position. In the former, a specific teacher loses her job, but the teaching position she holds is not eliminated. In the latter situation, a position is eliminated without reference to a particular teacher. The cause of the elimination and its timing are dictated by economic exigencies such as declining enrollment and/or budgetary considerations. The School must identify among the positions, which shall be eliminated and, among the staff, which teachers shall be let go. The teacher whose position is eliminated is not necessarily the teacher who will lose her job. Policy I directs the order in which the School must proceed in its determination of who will be let go. Policy I must be applied when the elimination of a position is the reason for non-renewal. While the arbitrator agrees with the School that teachers under an Initial Contract do not have all the rights granted to teachers under long-term agreements, a claimed violation of Policy I, unlike a claimed violation of the Initial Contract, is grievable and therefore arbitrable and that a "hearing on the merits shall be scheduled forthwith.".
Subsequently, on June 10, 17 and 28, 1999 additional hearings were held on the substantive issue, which was stated as follows:
 Did the school misinterpret and/or misapply the provisions of Policy I of the Agreement between the school office of The CT Page 1242 Archdiocese of Hartford (the "School") and the Sacred Heart Teacher's Association (the "Union") in terminating the employment of Cynthia Lombardo based upon a reduction in force?
If so what shall the remedy be?
An award was made on September 7, 1999 sustaining the grievance.
Policy I provides for certain comparison to determine which teacher must be let go in the event of a lay off. In pertinent part it states.
 Seniority shall apply to a particular department(s) within Sacred Heart High School for which the teacher is qualified and has been properly assigned (taught at least one class in that department). In the event a lay teacher's position is eliminated at Sacred Heart High School, tenured teachers will prevail over non-tenured teachers within the school, all other factors except salary being equal.
The arbitrator specifically stated that "this case is not about seniority nor about the credentials of either the grievant or (the other counselor)". Instead, the arbitrator specifically found that the School determined, in bad faith, to eliminate the grievant's position and thus her employment.
There were two guidance counselors who were possibly subject to being terminated in this layoff; the grievant, and one other. Both were good counselors. Ms. Lombardo, the grievant, was in her second year of teaching, and lacked certification. The other had been in the School for over 10 years, had previously served as head of the department and had been certified as a counselor in another state.
A determination of the merits of the Application To Confirm cannot be made without an examination of relevant provisions in the collective bargaining agreement. Key among those provisions are provisions that provide the School with unbridled authority to determine the number of positions it wishes.
Article II of the Agreement sets forth the prerogatives of the School, in pertinent part as follows:
 B. PREROGATIVES OF THE ARCHDIOCESE CT Page 1243
 It is recognized that the Archdiocese of Hartford (directly and through the Office of Catholic Schools) has and will continue to retain, whether exercised or not, the sole and exclusive right, responsibility and prerogative to control, manage, supervise and direct the operation of Sacred Heart High School in all respects, including but not limited to the following:
 1. To maintain the school and such educational activities related thereto as in its judgment will best serve the interests of the Archdiocese and the people it serves;
 4. To determine the number and qualifications of teachers to teach in the school;
As a second year teacher, Ms. Lombardo was still a probationary employee, employed under the Teacher's Initial Contract, exhibit D to the Agreement, as well as the provisions of the Agreement itself.
The Initial Contract provided in pertinent part as follows:
 This contract shall be renewed annually during the period of said teacher's probationary employment, unless the teacher has been notified in writing prior to March first in one school year that the contract will not be renewed for the following school year.
 This contract may be terminated by mutual consent at any time. It may be terminated by the School, acting through the Principal, for sufficient reason at any time. The teacher shall have the right to appeal such dismissal or the non-renewal of his contract to the Archdiocesan Superintendent of Schools ("Superintendent") by filing a written notice of appeal with the Superintendent within fifteen (15) days after notification of such dismissal or non-renewal is given to the teacher. The Superintendent will act upon such appeal within fifteen (15) days after receipt of the notice of appeal. The decision of the Superintendent shall be final and shall not be subject to the grievance procedure of the Agreement between the Office of Catholic Schools and the Association or to other appeal.
This Initial Contract mirrors the provisions of Article VI A.2 of the collective bargaining agreement which states:
 During the period of a Teacher's Initial Contract, his employment CT Page 1244 shall be probationary and the Principal shall have the right to terminate such employment for sufficient reason at any time, which reason(s) shall be stated in writing to the teacher. The teacher, however, shall have the right to appeal his dismissal or the non-renewal of his contract to the Superintendent as provided in the Teacher's Initial Contract and shall be permitted representation by an Association member designated by the Association. The decision of the Superintendent shall be final and shall not be subject to the grievance and arbitration procedure of this Agreement or to other appeal.
The grievance clause itself states in pertinent part as follows:
 c) . . . The arbitrator shall be bound by and must comply with all of the provisions of this Agreement. He shall have no power or authority to add to subtract from, or modify in any way any of the provisions of this Agreement.
 c) The arbitrator shall render his decision to both parties within four (4) calendar weeks after the conclusion of the hearing unless such time is extended by mutual written agreement of the Superintendent and the President of the Association. The decision of the arbitrator shall be in writing, shall be confined to the interpretation or application of the provisions of this Agreement in relation to the particular grievance submitted to him, and shall state the reasons for his decision. The decision of the arbitrator shall be final and binding upon the parties and upon all of the teachers covered by this Agreement, provided that it is not contrary to law.
About mid-February, the School Office determined that some staff cuts would be required based upon newly determined budgeting concerns. Incident thereto, the Office of Catholic Schools, through Joseph Bound, its Assistant Superintendent, directed the principal of the School to specifically cut one full time guidance counselor. On February 27, 1998, Cynthia Lombardo was notified by letter that "under the proposed budget for the school year 1998-1999 her present guidance position is being eliminated, and she would not be offered a contract for the 1998-1999 school year." One other member of the professional staff; Larry Drake (Drake) who taught religion, was given similar notice of lay-off.
Initially the Union accepted the lay-offs as bona fide CT Page 1245 decisions dictated by budget constraints but thereafter a new position, Vice Principal in Charge of Finance, was created and given to Craig Drezek (Drezek) whose salary doubled. An intern in recruitment, who was not under contract, was put under contract in a new full time position. New courses were created giving two teachers full time assignments, one in English and one in Social Studies. Although Drake's position had also been eliminated with that of grievant's, the courses he taught were still being offered.
In March, 1998, grievant was ordered by the principal to refrain from speaking to the Dean of Discipline, Brian Murphy (Murphy) either personally or professionally for the remainder of the school year or suffer the withdrawal of a recommendation he had written. That order was precipitated by a confrontation grievant had with Brian Murphy over her being excluded from a planning and placement team meeting involving one of her counselees. She had been led to believe by Mr. Murphy that her presence at the meeting was not needed because of its limited purpose. When she learned that the meeting involved the student's parents and all of his teachers along with the academic vice principal, and that one of his teacher's was Craig Drezek (who would be at the meeting) she confronted Murphy about her exclusion as promoting "personal agendas" at the expense of the student. Brian Murphy and Craig Drezek are close personal friends. The principal's letter silencing her followed.
Attempts by Lombardo to assume other assignments to avoid layoff were rejected. Even when an opening occurred in the guidance department itself; she was not recalled.
Based upon the additions to budget and the treatment of Lombardo, the Union filed a grievance of her lay-off and that of Drake on June 2, 1998. Drake declined to pursue the grievance and the matter of Lombardo was brought to arbitration after the Superintendent of Schools affirmed the decision of the principal to lay her off for budgeting reasons.
On September 17, 1999 the Union filed an application to confirm the award.
The source of the arbitrator's authority is found in the agreement of submission. "An agreement for the submission of an issue to arbitration constitutes the charter of the entire arbitration proceedings and defines and limits the issues to be CT Page 1246 decided by the arbitration." Board of Trustees v. Federation ofTechnical College Teachers, 179 Conn. 184, 193 (1979).
When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. Stratford v. Int'lAssn. of Firefighters, 248 Conn. 108 (1997), citing Hartford v.Board of Mediation and Arbitration, 211 Conn. 7 (1989).
When the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Caldor Inc. v. Thornton, 191 Conn. 336
(1983).
That submission here mirrors the language of the agreement between the parties in its arbitration clause: "If a grievance which directly concerns the interpretation or application of the specific provisions of the Agreement has not been settled after having been fully processed through Level Two of the above grievance procedure, such grievance may be submitted to arbitration. . . ." The submission was drafted and submitted by the Union and joined in by the School Office without objection or modification.
The award is as follows:
 The School did misinterpret and/or misapply the provisions of Policy I of the Agreement between the School Office of the Archdiocese of Hartford and The Sacred Heart Teachers' Association in terminating the employment of Cynthia Lombardo based upon a reduction in force. The grievance is sustained. The grievant shall be returned to her position at Sacred Heart forthwith. She shall be made whole for any and all losses including salaries and other benefits which she was denied during the period of her lay-off. (Plaintiff's Exhibit 8 p. 15)
Both parties were given full and ample opportunity to present their positions at a hearing lasting three full days. Lengthy briefs were filed, followed by reply briefs. The School Office sought permission and was given the opportunity to file a sur-reply brief. The hearing was fairly conducted, and completed in accordance with all timelines. CT Page 1247
The arbitration found that "while Policy I was referenced by the School in its termination decision in this case, it was not applied in good faith or in a fair and reasonable manner with respect to the grievant." The arbitrator further concluded "from the testimony and documents presented that Policy I was purposely applied by the School in an outcome determinative and inappropriate manner,"
 Law
I. Re Arbitrability Appeal
The School Office in the instant case did raise the issue of arbitrability at the first arbitration meeting on February 18, 1999. The arbitrator held one hearing on that issue and on April 7, 1999 found the grievance to be arbitrable. She labeled it "Arbitration Award" and it said "this matter is arbitrable. A hearing on the merits shall be scheduled forthwith." The "merits" hearings were held on June 10, 17 and 28, 1999. The submission on the merits had to have been filed prior to February 18, 1999.
The facts make it clear that there was only one arbitration.Naugatuck v. AFSCME, 190 Conn. 323. In Naugatuck the submission reads as follows:
 "`Is the grievance of Mr. Richard Brown arbitrable? If so what disposition shall be made of it'?" In the instant case there never was a formal submission of the question of arbitrability and thus on the issue of the timeliness of the present appeal it is stronger than Naugatuck where the court said, "`(a) party must demonstrate that an `award' on the merits has been rendered before any right to appeal attaches'". Id. 326.
II. Arbitrator's Decision
The arbitrator considered the "credibility of witness testimony" of some importance. That would certainly be appropriate and particularly if this submission had involved bad faith.
A basis of the arbitrator's authority is the submission. "The submission defines the scope of the entire arbitration proceeding by deliniating the issues to be decided."
School's Office claims to vacate is based on C.G.S. § CT Page 124852-418(h), that the arbitrator has exceeded her "powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made".
"Arbitration is a creature of contract, if the parties choose to set limits on the arbitrator's powers then the parties will be bound by these limits." Board of Education v. AFSCME,195 Conn. 266, 269. In our case the "authority to arbitrate is strictly limited by the provisions of the collective bargaining agreement and the scope of the matter to be considered by the arbitrator is limited by the submission." id. 271.
"[A]rbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense is own brand of . . . justice . . . [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement." United Steelworkers v. Enterprise Wheel and CarCorporation, 363 U.S. 593, 597. In the instant case the arbitrator was only authorized to decide if the school misinterpreted or misapplied the provisions of Policy I of the Agreement. The submission specifically states that Policy I is "of the Agreement." In Article VI A.2 of the Agreement the non-renewal of the contract of a probationary teacher such as Ms. Lombardo may be appealed to the Superintendent. "The decision of the Superintendent shall be final and shall not be subject to the grievance and arbitration procedure of this Agreement or to other appeal." That makes quite clear that there is no arbitration permitted for Ms. Lombardo under Policy I.
In addition the Teacher's Initial Contract, which is Exhibit D attached to the Agreement, says that it "may be terminated by the School acting through the Principal, for sufficient reason at any time." There is a right of appeal to the Superintendent whose decision "shall be final and shall not be subject to the grievance procedure of the Agreement. It also specifically provides that the "[initial] contract is subject to the Agreement", which provides for no arbitration for probationary teachers."
The arbitrator exceeded her powers. CGS § 52-418(h).
In examining any contract the court must determine the intent of the parties. The parties here had no intent to arbitrate this issue. CT Page 1249
The well-reasoned opinion of Judge Hodgson confirms this inTown of Wallingford v. Local 1570, 199 SW L 780875.
The arbitrator's award does not conform to the submission and thus on the merits it cannot be confirmed. Trumbull v. TrumbullPolice Local 1745, 1 Conn. App. 207, 212.
Judgment denying the Union's application to confirm and granting Schools' Office application to vacate.
N. O'Neill, J.