## ALBERT MENDEL AND SON, INC. *v.* LEONARD E. KROGH, COMMISSIONER OF AGRICULTURE (2814)

DUPONT, C.P.J., HULL and SPALLONE, Js.

Argued March 5—decision released May 21, 1985

*Kenneth N. Tedford,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (defendant).

*Karen P. Blado,* with whom, on the brief, was *Thomas J. Shortell,* for the appellee (plaintiff).

SPALLONE, J. The defendant appeals from a declaratory judgment in which the trial court ruled as to the evidence which could be introduced at a hearing to determine whether the plaintiff is qualified to be reissued a cattle dealer's license.

In January, 1980, the defendant ordered the plaintiff to show cause why its cattle dealer's license should not be revoked or suspended pursuant to General Statutes § 22-386[1] for importing cattle into Connecticut

[1] General Statutes (Rev. to 1981) § 22-386 provides: "For failure or refusal of a licensee to obey the provisions of this chapter, the commissioner may suspend or revoke the license held by such licensee. Whenever the commissioner is satisfied of the existence of any one or more reasons for revoking a license as provided for in this chapter, before revoking such license the department shall give written notice of a hearing to be had thereon to the licensee affected. Such notice shall be sent by registered or certified mail to the licensee at least ten days prior to the date set for the hearing at the department. On the day of the hearing the commissioner may hear the evidence presented by the licensee and any other witnesses, and the commissioner shall within a reasonable time thereafter render a decision. Any licensee aggrieved by the decision of the commissioner may appeal therefrom in accordance with the provisions of section 4-183, except venue for such appeal shall be in the judicial district of Hartford-New Britain. The following actions by the applicant or licensee shall constitute just cause for revoking or refusing a license: (1) The violation of state laws or official regulations governing instrastate or interstate movement of cattle or swine; (2) where there have been false or misleading statements with regard to the results of official diagnostic tests approved by the commissioner and the Agricultural Research Service of the United States department of agriculture for the diseases of bovine brucellosis or tuberculosis, vesicular exanthema of swine, foot and mouth disease, anaplasmosis and anthrax, or with regard to ownership; (3) the buying or receiving of cattle or swine, selling or exchanging, or soliciting resale, exchange, transport or transfer, of animals officially branded by the department of agriculture as being diseased, a quarantined animal, or animals from quarantined herds; provided this subsection shall not apply to cattle which have reacted to any offical test used for the detection of tuberculosis or brucellosis, or to cattle in a herd under quarantine for the presence of the diseases tuberculosis or brucellosis when such cattle are disposed of in conformity with state laws and regulations governing disposal of such cattle; (4) failure of the licensee to practice approved measures of sanitation of barns, stables, premises or vehicles used for stabling, holding or transporting of cattle or swine; (5) consistent or continual failure to keep records required by the commissioner

without a permit and without the cattle being properly tested and certified as free of disease. A hearing was scheduled for February 25, 1980. The plaintiff waived the hearing and, on May 9, 1980, entered into a stipulation and agreement with the defendant. Under the terms of the stipulation, the parties agreed that the plaintiff's license would be suspended for a one year period from January 7, 1980, and that upon the expiration of that period, the plaintiff, upon application, would be reissued a license if it met certain conditions.

On June 3, 1982, the plaintiff reapplied for a cattle dealer's license.[2] Prior to a hearing on the application, the plaintiff requested that the defendant issue declaratory rulings[3] on several matters, including the effect of the stipulation on the evidence which could be admitted at the hearing. Specifically, the plaintiff requested that the defendant declare that all matters alleged to have occurred before January 7, 1980, the effective date of the suspension of its license, were settled by the stipulation and that evidence relating to such matters could not be presented at the hearing. On August 2, 1982, the defendant ruled that the stipulation did not preclude the presentation of evidence of such matters.

---

or by law, or refusal to produce books, accounts or records of transactions in the carrying on of the business for which the license is granted, and (6) failure to comply with any provision of the general statutes or regulations thereunder relating to cattle or swine."

[2] The plaintiff filed one previous application to reinstate its license which it withdrew on May 1, 1983. That application has no bearing on this appeal.

[3] General Statutes (Rev. to 1981) § 4-176 provides: "Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings. If the agency fails to exercise its discretion to issue such a ruling, such failure shall be deemed a sufficient request by the plaintiff for the purposes of section 4-175. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases."

The plaintiff then sought a declaratory ruling from the Superior Court on the admissibility of such evidence.[4] After reviewing the stipulation, the trial court found "that only those matters pertaining to the qualifications of the plaintiff which occurred since January 7, 1980, and those of like nature which occurred prior to that date but which were then not known to the Department of Agriculture may be considered by the Commissioner with respect to the plaintiff's application. On an offer of evidence involving a matter alleged to have occurred prior to January 7, 1980, it shall be the burden of the Department of Agriculture to prove a lack of knowledge of such matter on said date."

On appeal, the defendant argues that the trial court erred in its interpretation of the stipulation. He maintains that the stipulation should be treated merely as a determination of the allegations set forth therein and that it should not be construed to limit in any way the evidence which may be introduced at the hearing on the plaintiff's license. He further claims that the court erred in placing on him the burden of proving lack of knowledge of matters which occurred prior to January 7, 1980.[5]

---

[4] The plaintiff sought the following rulings: "1. Evidence of any matter alleged to have occurred before the signing of the Stipulation and Agreement would have no probative value in the Commissioner's determination, all such matters having been settled as per Paragraph 7 of the Stipulation and Agreement.

"2. Since the Commissioner had the authority to revoke Mendel's Cattle Dealer's License and did not revoke it, there is a presumption that Petitioner was qualified under the provisions of C.G.S. § 22-384 as of the date of signing of the Stipulation and Agreement, and, therefore, evidence relating to Mendel's qualifications before said date shall not be presented or heard at the continued hearing."

At trial, the parties agreed that the sole question for the court to decide was whether evidence of matters that occurred before January 7, 1980, could be presented at the hearing.

[5] The portions of the stipulation which are central to this appeal are as follows:

The duties of the defendant, as the head of an administrative agency, necessarily include the right to exercise discretion. *Riley* v. *State Employees' Retirement Commission,* 178 Conn. 438, 442, 423 A.2d 87 (1979). "[T]he essence of such discretionary power is that the agency or commission may choose which of several permissive courses will be followed." Id. In this case, the defendant entered into a stipulation with the plaintiff pursuant to General Statutes § 4-177 (d) which provides as follows: "Unless precluded by law, informal disposition may be made of any contested case by stipulation, agreed settlement, consent order, or default."

The settlement of disputes by informal processes serves the public interest as an alternative to litigation. See *United States* v. *Armour & Co.,* 402 U.S. 673, 681, 91 S. Ct. 1752, 29 L. Ed. 2d 256 (1971). Informal dis-

"6. Upon the expiration of the one-year suspension period agreed to herein, the Commissioner shall, upon application by the Licensee, issue a Cattle Dealer's License to the Licensee, provided: (a) the Licensee, its officers, agents and employees have complied with the provisions of this Stipulation and Agreement; (b) the Licensee, its officers, agents and employees have complied with the Agriculture and Domestic Animal Statutes of the State of Connecticut and the regulations adopted thereunder during the period of suspension, and (c) the Licensee is otherwise qualified to hold such License pursuant to Section 22-384 of the General Statutes of Connecticut.

"7. This Stipulation and Agreement is in full settlement of all matters concerning the Licensee within the knowledge of the Connecticut Department of Agriculture as of January 7, 1980."

The trial court stated in its memorandum of decision that the defendant made no claim that the plaintiff had not complied with sections (a) and (b) of paragraph 6 of the stipulation. The defendant has raised as an additional claim of error that the trial court erred in making that finding. Our review of the record and the transcript reveals that the defendant indeed made no claim as to the plaintiff's compliance with sections (a) and (b) of paragraph 6. The trial court's notation that no such claim had been made was, in our opinion, mere recognition of the fact that the sole question before it was whether the defendant was entitled to receive any evidence of matters which occurred before January 7, 1980. See footnote 4, supra. We therefore see no reason to depart from our general rule that we will not consider on appeal issues which are not raised and decided in the trial court. *Mazur* v. *Blum,* 184 Conn. 116, 120, 441 A.2d 65 (1981).

positions enable agencies to more efficiently allocate their limited resources and thereby maximize their capacity to serve the public. See *Johnson Products Co. v. F. T. C.*, 549 F.2d 35, 39 (7th Cir. 1977). Procedures leading toward such disposition are themselves informal and are developed by the agencies themselves. See *Action on Safety and Health v. F. T. C.*, 498 F.2d 757 (D.C. Cir. 1974); 4 Mezines, Stein & Gruff, Administrative Law § 33.01. When informal settlements are achieved they are considered binding; *Winn-Dixie Stores, Inc. v. F. T. C.*, 377 F. Sup. 773 (M.D. Fla. 1974); and are strictly interpreted by the courts. 4 Mezines, Stein & Gruff, Administrative Law, supra.

"Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." (Footnote omitted. Emphasis in original.) *United States v. Armour & Co.*, supra, 681–82.

In considering the scope of the settlement between the parties in this case, we are likewise bound by the four corners of the stipulation. In our review, we bear in mind that the stipulation is in fact a contract, and

that the intention of the parties controls the construction of that contract. *Hatcho Corporation* v. *Della Pietra,* 195 Conn. 18, 20, 485 A.2d 1285 (1985). Their intention is determined from the language used. *Sturman* v. *Socha,* 191 Conn. 1, 10, 463 A.2d 527 (1983). Any concealed intent which either party may have harbored plays no part in this determination. Id. The words as written, moreover, must be accorded a fair and reasonable construction and their "common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Id.

It is an accepted principle of contract law that a contract is construed as a whole, and all relevant provisions are considered together. *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 407, 365 A.2d 1086 (1976). Paragraph 6 (c) of the stipulation states that the plaintiff may be issued a license if it "is otherwise qualified to hold such license under Section 22-384 of the Connecticut General Statutes." On that basis, the defendant maintains that the stipulation should not be construed to restrict the evidence which may be considered at the hearing. Paragraph 6 (c), however, must be read in light of paragraph 7, which states in clear and unambiguous language that the stipulation is in "full settlement of all matters concerning the Licensee within the knowledge of the Connecticut Department of Agriculture as of January 7, 1980." Parol evidence to show that a different meaning was actually desired will not be admitted where the intent of the parties is so clearly expressed. *Welch* v. *Arthur A. Fogarty, Inc.,* 157 Conn. 538, 547, 255 A.2d 627 (1969). Since parties generally do not insert meaningless provisions in their agreements, every provision must be given effect if reasonably possible. *Hatcho Corporation* v. *Della Pietra,* supra, 23.

Contractual intention is generally held to be a question of fact. See *First Hartford Realty Corporation* v.

*Ellis,* 181 Conn. 25, 33, 434 A.2d 314 (1980); *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 427, 488 A.2d 1290 (1985). As a consequence, the trial court's conclusion as to such intent is subject to review on appeal under the limited standard of whether it is clearly erroneous. *Lavigne* v. *Lavigne,* supra. In view of the clear and unambiguous language of paragraph 7, we cannot conclude that the trial court's ruling as to the scope of the stipulation was clearly erroneous.

As to the defendant's remaining claim of error, we find that the trial court correctly placed the burden of proof of lack of knowledge of matters prior to January 7, 1980, on the defendant. It is fundamental in our law that the party asserting a fact has the obligation of proving it. See, e.g., *Fishel* v. *Motta,* 76 Conn. 197, 56 A. 558 (1903). "[W]henever the existence of any fact is necessary in order that a party may make out his case or establish his defense, the burden is on such party to show the existence of such fact." Holden & Daly, Connecticut Evidence § 53. This is generally so even when the fact to be proven is a negative one. McCormick, Evidence (2d Ed.) § 337.

The proper allocation of the burden of proof may be distilled to a question of policy and fairness based on experience in different situations. *Rustad* v. *Great Northern Ry.,* 122 Minn. 453, 456, 142 N.W. 727 (1913); James & Hazard, Civ. Proc. (2d Ed.) § 7.8 n.1. A number of variables are considered in determining where the burden properly lies.[6] One consideration is which party has readier access to knowledge about the fact in question. While this consideration is by no means

---

[6] The allocation of the burden of proof is made on the basis of one or more of several variable factors. It is said that the burden properly rests upon the party who must establish the affirmative proposition, to whose case the fact in question is essential, who has the burden of pleading a fact, who has readier access to knowledge about the fact, or whose contention departs from what would be expected in the light of everyday experience. James & Hazard, Civ. Proc. (2d Ed.) § 7.8.

controlling; James & Hazard, supra, § 7.8; in this case it is persuasive. Any investigation of the plaintiff prior to January 7, 1980, was certainly done by agents or employees of the department of agriculture. For the plaintiff, the task of showing what any such investigation revealed would be difficult, if not impossible. See *United States* v. *Denver & R.G.R.R.*, 191 U.S. 84, 91–92, 24 S. Ct. 33, 48 L. Ed. 106 (1903). We thus conclude that the trial court properly placed upon the defendant the burden of proving matters of which, in all likelihood, it alone would be aware.

There is no error.

In this opinion the other judges concurred.