CITY OF HARTFORD *v.* CONNECTICUT STATE BOARD OF MEDIATION AND ARBITRATION ET AL.
(13464)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued December 15, 1988—decision released April 25, 1989

*Stephen F. McEleney,* for the appellant (defendant City of Hartford Professional Employees Association).

*H. Maria Cone,* assistant corporation counsel, with whom, on the brief, was *Eunice S. Groark,* corporation counsel, for the appellee (plaintiff).

HULL, J. This case concerns the validity of the remedy portion of an arbitration award by the named defendant Connecticut state board of mediation and arbitration (board) in favor of the defendant City of Hartford Professional Employees Association (CHPEA) upon a finding by the board that the plaintiff city of Hartford violated its collective bargaining agreement with CHPEA. Pursuant to General Statutes § 52-418,[1] the city filed an application in the Superior

---

[1] "[General Statutes] Sec. 52-418.  VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material

Court to vacate the arbitration award as to remedy only. The trial court granted the city's application, holding that the remedy portion of the arbitration award was unenforceable as against public policy. CHPEA has appealed that judgment. We conclude that the remedy ordered by the board does not violate public policy and therefore set aside the judgment of the trial court and remand with direction to deny the application.

The relevant facts are not in dispute. Pursuant to a collective bargaining agreement with the city of Hartford, CHPEA is the exclusive bargaining agent representing all professional employees working for the city. In 1985, CHPEA filed a grievance on behalf of two of its members, Janet LePage and Fay Williams.[2] CHPEA alleged that the city had breached the rules contained in the collective bargaining agreement governing the promotion of CHPEA members when it promoted a "favored" employee to a position in the department of social services for which the grievants were passed over.

A full hearing was held before a three member arbitration panel of the board consisting of a representative each of management, labor and the public. The

to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators.

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the state board of mediation and arbitration shall notify said board and the attorney general, in writing, of such filing within five days of the date of filing."

[2] Article II of the collective bargaining agreement with the city provides that any grievance or dispute that may arise concerning the application, meaning or interpretation of the agreement, unless specifically excluded, shall be settled pursuant to the grievance procedure.

arbitrators framed the issue as follows: "Did the City of Hartford violate the Contract by the procedures it used in conducting the promotion and filling [of] the Senior Administrative Analyst position in the Site Services Workfare Unit of the Department of Social Services between November 15, 1984 and July 22, 1985? If so, what shall the remedy be?"

A full understanding of the arbitrators' decision on this matter requires that we first discuss briefly the procedures used by the city in selecting and promoting its employees. The selection and promotion of city employees is governed by the city's personnel rules and regulations, which are promulgated by the director of personnel and the personnel board pursuant to powers granted them under the city charter. These rules are designed to carry out the provisions of the city charter that endorse a policy of "merit selection," i.e., the selection and promotion of city employees upon the basis of merit rather than favoritism.[3] This is accomplished primarily through the use of competitive examinations to fill vacancies in higher positions.

Typically, under the city's personnel rules, qualified candidates vying for a promotion in a given department are required to take an examination that is designed to test the capacity and fitness of the candidates to discharge the duties of the position to be filled. The candidates are then ranked according to their test scores. Thereafter, the names of the three highest ranking candidates are submitted to the head of the department, who is granted the sole discretion to award the position to any of the three. This requirement that the names of the three highest ranking candidates for a position be submitted to the department head, the so-

[3] The city's personnel rules and regulations governing the selection and promotion of city employees are expressly incorporated into the collective bargaining agreement between the city and CHPEA.

called "rule of three," is expressly set forth in chapter XVI, § 2 (b), of the city charter and has been incorporated into rule VIII of the city's personnel rules and regulations.

In their decision, the arbitrators made the following findings. In November, 1984, the city of Hartford through its department of personnel posted a "promotional opportunity" for four positions as senior administrative analysts in the site services workfare unit of the department of social services (department). Testing for the positions was open to all employees of the department who met certain eligibility requirements fixed by the director of personnel. On January 17, 1985, the city held an examination for the positions. The candidates were ranked according to their test scores and from these rankings the city established an "eligibility list" comprised of twelve candidates. The grievants, LePage and Williams, were ranked fifth and sixth on the eligibility list, respectively. During March, 1985, the five highest ranking candidates on the list were interviewed for three of the four job openings.[4] The candidates ranked first, second and fourth on the list were selected for three of the openings. Candidate Karen Bailey, ranked third, and grievant LePage, ranked fifth, were not selected.

In order to fill the one remaining analyst position the city conducted a second round of interviews on May 14, 1985. The city interviewed grievant Williams, ranked sixth, Sharon Hunter, ranked seventh, and another candidate ranked eighth on the list. LePage and Bailey, who both ranked higher on the list than the three candidates interviewed by the city, were inexplicably not

---

[4] The "rule of three" as set forth in the city charter contemplates a single promotional opportunity. Where there is more than one opening available for a position, rule VIII of the city's personnel rules and regulations requires that the director of personnel submit to the department head two names more than the number of existing vacancies.

interviewed for this last opening. As it turned out, however, no one was awarded the position as a result of this second round of interviews. Instead, on May 28, 1985, the city posted a *second* "promotional opportunity" for the remaining analyst position, which required a new round of competitive examinations. Unlike the first posting, however, which was open to all employees of the department, this second posting was restricted to employees of the department's site services workfare unit only. Since they were not employees of the workfare unit, Bailey, LePage and Williams were effectively precluded under the terms of the second posting from testing again for the final analyst position. Only two departmental employees, Sharon Hunter and Bienvenida Fernandez, both of the workfare unit, were eligible under the terms of the second posting to test a second time for the remaining analyst position. Based on this second examination, Hunter was awarded the position, despite the fact that the grievants both ranked higher than Hunter on the original eligibility list.

As a result of LePage and Williams being denied an opportunity to test for the remaining analyst position, CHPEA filed a grievance on their behalf claiming that the procedures used by the city in awarding the position violated the collective bargaining agreement between the parties. The dispute was subsequently submitted to arbitration.

In their decision, the arbitrators unanimously agreed that by limiting the second posting to workfare unit employees of the department only, the city had improperly denied the grievants an opportunity to test for the last available analyst position in violation of its personnel rules and regulations and the collective bargaining agreement. Having found a violation of the agreement, the arbitrators proceeded to fashion a remedy. The remedy agreed upon by the arbitrators ordered that

LePage and Williams each be given an examination by the city and that the city award the analyst position "to the most qualified of the two candidates."

Dissatisfied with the remedy ordered by the arbitrators, the city filed an application in the Superior Court to vacate the arbitration award as to remedy only. General Statutes § 52-418. The trial court granted the city's application, holding that the remedy ordered by the arbitrators was unenforceable as against public policy since it did not adhere to the "rule of three" set forth in the city charter requiring that the names of the three highest ranking candidates be submitted to the department head for final selection. This appeal followed.

I

We first consider whether this appeal is properly before us. In its brief, CHPEA points out that the city's application to vacate the arbitration award filed in the Superior Court was "devoid of an allegation of violation of public policy or a request to vacate on that basis." Since the trial court's decision to grant the city's application rested exclusively on public policy grounds, CHPEA'S observation necessarily raises the question of whether it was within the trial court's jurisdiction to base its decision on an issue not expressly raised in the pleadings. See, e.g., *Doublewal Corporation* v. *Toffolon,* 195 Conn. 384, 390–91, 488 A.2d 444 (1985) (judgment must ordinarily be restricted to issues reasonably within the scope of the pleadings).

Although the city did not expressly claim in its application that the award should be vacated on the ground that it violated public policy, the city did allege that the award should be vacated because "[t]he arbitrators have exceeded their powers" in violation of General Statutes § 52-418 (a) (4). We conclude that such an allegation is sufficient to include within it a claim relating to the invalidity of the arbitration award on public

policy grounds. It was therefore within the trial court's jurisdiction to render judgment in favor of the city on that basis. Accordingly, the present appeal is properly before us. See Practice Book § 4001.

## II

The principal issue on this appeal is whether the remedy portion of the arbitration award so clearly violated public policy that it was properly vacated by the trial court as exceeding the arbitrators' power under § 52-418 (a) (4). Before we undertake our analysis of this issue, it is useful to identify the principles that govern our review of private consensual arbitration. "This court has for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes 'intended to avoid the formalities, delay, expense and vexation of ordinary litigation.' *Bridgeport* v. *Bridgeport Police Local 1159,* 183 Conn. 102, 107, 438 A.2d 1171 (1981) . . . ." *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* 203 Conn. 133, 145, 523 A.2d 1271 (1987). "We have recognized that when arbitration is consensual, rather than statutorily imposed, judicial review is limited in scope. . . . If the parties mutually agree to submit their dispute to arbitration, the resulting award is not reviewable for errors of law or fact. . . . Judicial review of unrestricted submissions is limited to a comparison between the submission and the award to see whether, in accordance with the powers conferred upon the arbitrators, their award conforms to the submission." (Citations omitted.) *New Haven* v. *AFSCME, Council 15, Local 530,* 208 Conn. 411, 415–16, 544 A.2d 186 (1988).

The development of our case law in this area has, however, led to the recognition of two narrow exceptions to the broad authority ordinarily exercised by arbitrators in the arbitration process: "First, with

respect to constitutional questions, although arbitrators may decide legal issues that have constitutional implications, they exceed their authority when they address the constitutional validity of a statute. . . . Second, with respect to matters of public policy generally, arbitrators exceed their authority if their award orders a party to engage in conduct that is patently illegal or in clear violation of public policy. . . . The party challenging an arbitration award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." (Citations omitted.) Id., 416–17.

The city is claiming: that there is a strong public policy in this state favoring the selection and promotion of public employees based on merit; that it has expressly adopted a merit selection process for its employees, as evidenced by provisions in its charter; and that the "rule of three" is an indispensable component of that process. The conclusion that must logically follow, the city contends, is that the arbitrators' failure to adhere to the rule of three in the remedy portion of the arbitration award is tantamount to a violation of the strong public policy of merit selection, thereby rendering the remedy unenforceable.

On the other hand, CHPEA claims that the implementation of the rule of three under the facts of this case would actually undermine, rather than advance, the merit selection process. Thus, CHPEA contends, the arbitrators' failure to abide by the rule of three in fashioning the remedy portion of the arbitration award did not violate the claimed public policy of merit selection. We agree with CHPEA.

We find the case of *United Paperworkers International Union* v. *Misco, Inc.*, 484 U.S. 29, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987), to be particularly persuasive. In that case, a member of the plaintiff union,

Isiah Cooper, was apprehended by police in the defendant company's parking lot while in the back seat of someone else's car with marijuana smoke in the air and a lighted marijuana cigarette in the front-seat ashtray. Id., 33. A police search of Cooper's own car on the lot disclosed small traces of marijuana. Upon learning of the incident, the company discharged Cooper for violating its disciplinary rule prohibiting the possession or use of controlled substances on company property. Cooper filed a grievance which proceeded to arbitration on the stipulated issue of whether the company had just cause for discharging him under the company rules and, if not, the appropriate remedy. Id., 33–34. The arbitrator upheld the grievance and ordered that Cooper be reinstated to his job operating a slitter-rewinder machine, a machine the arbitrator classified as "hazardous." Id., 32, 34. The arbitrator ruled that the marijuana cigarette incident was insufficient to prove that Cooper was using or possessed marijuana on company property in violation of company rules.[5] Id., 34. The District Court, however, vacated the arbitration award and the Fifth Circiut Court of Appeals affirmed, on the ground that the reinstatement of Cooper would violate the public policy " 'against the operation of dangerous machinery by persons under the influence of drugs . . . .' " Id., 35. The United States Supreme Court reversed the Court of Appeals, stating that "[e]ven if the Court of Appeals' formulation of public policy is to be accepted, no violation of that policy was clearly shown in this case. In pursuing its public policy inquiry, the Court of Appeals quite properly considered the established fact that traces of marijuana had been found in Cooper's car. Yet the assumed connection between

---

[5] Because, at the time of the discharge, the company was not aware of, and thus did not rely upon, the fact that marijuana had been found in Cooper's own car, the arbitrator refused to accept this fact into evidence. *United Paperworkers International Union* v. *Misco, Inc.,* 484 U.S. 29, 34, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987).

the marijuana gleanings found in Cooper's car and Cooper's actual use of drugs in the workplace is tenuous at best and provides an insufficient basis for holding that his reinstatement would actually violate the public policy identified by the Court of Appeals 'against the operation of dangerous machinery by persons under the influence of drugs or alcohol.'. . . A refusal to enforce an award must rest on more than speculation or assumption." Id., 44.

Similarly, in the present case, even if we were to accept the city's claims that there is a strong public policy in favor of the selection of public employees based upon merit, that it has adopted such a merit selection process, and that the rule of three is a legitimate feature of that process, the city has nevertheless failed to demonstrate the required nexus between the failure of the arbitrators to abide by the rule of three and a violation of the claimed public policy of merit selection.

The rule of three grants a department head the discretion to award a promotional position to any one of the three most qualified candidates. The underlying rationale for the granting of such discretionary power is that the department head should have a limited say in deciding whom he must work with on a daily basis. Certainly, however, no one would dispute that this discretionary power is not validly exercised in the name of merit selection if, in awarding a position, the department head is predisposed to excluding certain candidates from the position based upon factors unrelated to performance capability and compatibility.

If the rule of three were implemented in this case, then in addition to the two grievants, the next highest candidate on the eligibility list would be submitted to the department head for selection of the final analyst position. In deciding whether the grievants would

receive impartial treatment in this final selection process, we cannot overlook the fact that the parties have been involved in a bitter legal battle over this matter for more than three years. Despite the city's assurances to the contrary, we agree with CHPEA that if the rule of three were put into effect in the present case, the grievants would run a significant risk of being passed over for the remaining analyst position in favor of the third candidate by a city predisposed to excluding them for personal reasons unrelated to their qualifications for the job. Thus, in our view, implementation of the rule of three under the circumstances of this case would actually lessen the likelihood that the promotional opportunity would be awarded based on merit. We conclude, therefore, that the refusal of the arbitrators to abide by the rule of three in the remedy portion of their award does not violate the claimed public policy of merit selection in this case.

There is error, the judgment of the trial court is set aside and the case is remanded with direction to render judgment denying the application to vacate the arbitration award.

In this opinion the other justices concurred.