CITY OF NEW HAVEN *v.* LOCAL 884, COUNCIL 4, AFSCME, AFL-CIO
(AC 18889)

Landau, Spear and Mihalakos, Js.

Argued January 10—officially released July 18, 2000

*J. William Gagne, Jr.*, with whom, on the brief, was *Jason W. Cohen*, for the appellant (defendant).

*Audrey C. Kramer*, assistant corporation counsel, for the appellee (plaintiff).

*Opinion*

LANDAU, J. The defendant, Local 884, Council 4, AFSCME, AFL-CIO (union), appeals from the judgment rendered by the trial court granting an application to vacate an arbitral award filed by the plaintiff, the city of New Haven (city). On appeal, the union has raised numerous issues with respect to the court's granting of the application to vacate on the basis of public policy. The union also claims that there was insufficient evidence to grant the application. We affirm the judgment of the trial court.

This case has a protracted and complicated history in our trial and appellate courts, which is found in the courts' several opinions. "On April 18, 1986, the [city] terminated the grievant, Benedetto Minichino, from his position as a sanitarian. The matter was brought to the [state board of mediation and arbitration (board)], and the [city] appealed to the trial court from an award in

favor of the grievant. The matter was returned to the board, where each party sought and received at least one continuance. It was then assigned for what was to be a final hearing on August 14, 1991.

"Clifton E. Graves, Jr., the attorney handling the matter for the [city], became ill the night before the scheduled hearing. Graves called the board offices the next morning and spoke first to the attorney for the [union]. She advised him that the granting of a continuance was the board's decision. The board chairperson then told Graves that the hearing would be held in his absence and that he could send someone else.

"A proposed agreement was read to Graves after he spoke with counsel for the [union], and Graves agreed to a resolution." *New Haven* v. *Local 884, Council 4, AFSCME, AFL-CIO*, 38 Conn. App. 709, 710–11, 662 A.2d 818 (1995), rev'd, 237 Conn. 378, 677 A.2d 1350 (1996). Subsequently, the city filed an application to vacate the arbitration award in the Superior Court, which the trial court denied. "The court concluded that although a continuance should have been granted, when Graves proceeded to negotiations, 'he waived any defect in the proceedings up to that point.' " Id., 711.

On appeal to this court, we held that once it determined that misconduct had occurred, "the trial court was required to vacate the award pursuant to [General Statutes] § 52-418 (a) (3). The court failed to vacate the award, finding instead that 'although the continuance should have been granted, once Graves went on to negotiate, he waived any defect in the proceedings up to that point.' This issue need not have been reached by the court. Once a finding of misconduct was made, the court was required to vacate the award." Id., 714.

The union appealed to our Supreme Court, which held that "a party may waive such [§ 52-418 (a) (3)] misconduct, and that in this case the trial court properly

found that the [city] had waived the misconduct on the part of the board." *New Haven* v. *Local 884, Council 4, AFSCME, AFL-CIO*, 237 Conn. 378, 380, 677 A.2d 1350 (1996). The case was remanded to this court.

On remand to this court, we addressed the city's remaining claim that "the trial court improperly refused to vacate the arbitration award on the ground that [Graves] lacked authority to bind it to the proposed resolution." *New Haven* v. *Local 884, Council 4, AFSCME, AFL-CIO*, 44 Conn. App. 764, 767, 694 A.2d 417, cert. denied, 241 Conn. 915, 696 A.2d 984 (1997). After discussing the law of agency with respect to municipalities, we concluded that "the trial court improperly determined that the [city] waived any claim that its agent lacked authority to bind it to the arbitration award. There was no indication from the record that the [city] empowered Graves with the express authority to waive any of the its claims regarding the extent of his authority." Id., 769. There also was "no evidence that the [city], through its own actions, ever caused or allowed the [union], or the trial court for that matter, to believe that Graves possessed the authority to waive its claim, or knowingly permitted him to waive its claim. Therefore, Graves did not possess the apparent authority to waive the [city's] claim." Id., 770. "[T]he [city] took no steps to accept the results of the proposed resolution. On the contrary, the [city's] affirmative acts in pursuing litigation regarding the application to vacate the award and in refusing to comply with its terms demonstrate that it rejected the proposed settlement." Id. We remanded the case for a new trial.

On remand, the parties agreed that the matter should be addressed in a two step process. First, as a matter of law, after briefing and argument, the court was to determine whether there was a legal basis to vacate the award; if so, the court would then hold an evidentiary hearing to determine whether there was a factual basis

to vacate the award. In other words, the court had to determine first whether there was a legal basis to support the city's assertion that Graves lacked authority to resolve the grievant's claim, and, if so, the court was to hear evidence that Graves, in fact, did not have authority to resolve the claim.

Following a hearing on the legal question, however, the court issued a memorandum of decision vacating the award, concluding that the city's charter provided a public policy basis to vacate the award, and that the procedural history of the case demonstrated that Graves did not have authority to resolve the grievant's claim. The union appealed, claiming that the court improperly (1) permitted the city to raise a public policy violation on remand when the claim had not been alleged in the supplemental application to vacate, (2) granted the city's application to vacate because (a) the award violated public policy pursuant to the city charter and (b) the court improperly relied on *Norwalk* v. *Board of Labor Relations*, 206 Conn. 449, 538 A.2d 694 (1988), (3) concluded that the charter provision requiring the board of finance of the city to consider all claims against the city and to approve such claims it deems valid applied to the present case and that it was not followed and (4) abused its discretion by deciding the case without holding an evidentiary hearing.

I

The union's first claim is that the court improperly permitted the city on remand to raise a public policy violation as a basis on which to vacate the board's award because the city had not alleged a public policy violation in its supplemental application to vacate. We do not agree.

The following procedural history is necessary for our resolution of this claim. The city's supplemental application to vacate the arbitral award alleges that the

award was coerced and unlawful, and that, pursuant to General Statutes § 52-418 (a) (3) and (4),[1] "the arbitrator so imperfectly executed his powers in coercing [Graves] to enter into a settlement that any agreement or fruits of said agreement should be null and void."

The union's claim concerns the question of "whether it was within the court's jurisdiction to base its decision on an issue not expressly raised in the pleadings"; *Hartford* v. *Board of Mediation & Arbitration*, 211 Conn. 7, 13, 557 A.2d 1236 (1989); and thus we must address the question of whether we may review the claim. Ordinarily, a judgment is restricted to the issues reasonably within the scope of the pleadings. *Doublewal Corp.* v. *Toffolon*, 195 Conn. 384, 390–91, 488 A.2d 444 (1985). The present case is factually on point with *Hartford* v. *Board of Mediation & Arbitration*, supra, 13–14, in which our Supreme Court held: "Although the city did not expressly claim in its application that the award should be vacated on the ground that it violated public policy, the city did allege that the award should be vacated because '[t]he arbitrators have exceeded their powers' in violation of General Statutes § 52-418 (a) (4). We conclude that such an allegation is sufficient to include within it a claim relating to the invalidity of the arbitration award on public policy grounds. It was therefore within the trial court's jurisdiction to render judgment in favor of the city on that basis. Accordingly, the present appeal is properly before us." Id. We con-

---

[1] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or . . . any judge thereof, shall make an order vacating the award if it finds any of the following defects . . . (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of parties have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

clude for the same reasons that the claim is properly before us, and that the court had jurisdiction to consider the city's public policy argument and to render judgment for the city on that basis.[2]

## II

The union claims next that the court improperly (1) granted the city's application to vacate because the award violated public policy pursuant to the city charter and (2) relied on *Norwalk* v. *Board of Labor Relations,* supra, 206 Conn. 449. The union is mistaken.

Because the city's challenge to the arbitral award raises a legitimate and colorable claim of violation of public policy, we undertake de novo review of the award. *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.,* 252 Conn. 416, 429, 747 A.2d 1017 (2000).

## A

The courts of this state have recognized that a violation of public policy is a basis to vacate an arbitral award. Our Supreme Court recently restated the familiar principles reflecting its traditional deference to arbitral awards. See *State* v. *AFSCME, Council 4, Local 387, AFL-CIO,* 252 Conn. 467, 473, 747 A.2d 480 (2000). "We have consistently stated that arbitration is the favored means of settling differences and arbitration awards are generally upheld unless an award clearly falls within the proscriptions of § 52-418 of the General Statutes. *Board of Education* v. *AFSCME,* 195 Conn. 266, 270, 487 A.2d 553 (1985); *Board of Education* v.

---

[2] The union's position that the public policy argument was raised for the first time on remand is somewhat misleading. Although the words "public policy" may not have been used during the first trial, the city did allege Graves' lack of authority and addressed the issue during the first trial. The court's 1994 memorandum of decision states in part: "The claim, raised for the first time at the hearing, that [Graves] lacked the authority to bind the plaintiff city and so advised the panel members, appears to the court to be an afterthought."

*Bridgeport Education Assn.*, 173 Conn. 287, 290, 377 A.2d 323 (1977); *International Union* v. *Fafnir Bearing Co.*, 151 Conn. 650, 653, 201 A.2d 656 (1964); *Board of Education* v. *Local 818*, 5 Conn. App. 636, 639, 502 A.2d 426 (1985). A challenge of the arbitrator's authority is limited to a comparison of the award to the submission. *Bic Pen Corporation* v. *Local No. 134*, 183 Conn. 579, 584, 440 A.2d 774 (1981); see also *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 186, 530 A.2d 171 (1987); *Board of Education* v. *AFSCME*, supra, 271; *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 340, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985); *Bruno* v. *Department of Consumer Protection*, 190 Conn. 14, 18, 458 A.2d 685 (1983); *Bridgeport* v. *Bridgeport Police Local* 1159, 183 Conn. 102, 106, 438 A.2d 1171 (1981); *Board of Education* v. *Local 818*, supra, [639]. *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 338, 555 A.2d 406 (1989).

"Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 115, 728 A.2d 1063 (1999).

"In spite of the general rule that challenges to an arbitrator's authority are limited to a comparison of the award to the submission, an additional challenge exists under § 52-418 (a) (4) when the award rendered is claimed to be in contravention of public policy. *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 416–17, 544 A.2d 186 (1988); *Stratford* v. *Local 134, IFPTE*, 201 Conn. 577, 590–91, 519 A.2d 1 (1986); *Board of Trustees* v. *Federation of Technical College Teachers*, 179 Conn. 184, 195, 425 A.2d 1247 (1979); *Stamford* v. *Stamford Police Assn.*, 14 Conn. App. 257, 259, 540

A.2d 400 (1988); *State* v. *Connecticut Council 4, CEU, AFSCME,* 7 Conn. App. 286, 290, 508 A.2d 806 (1986) . . . . This challenge is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail in the present case only if it demonstrates that the board's award clearly violates an established public policy mandate." (Internal quotation marks omitted.) *State* v. *AFSCME, Council 4, Local 387, AFL-CIO,* supra, 252 Conn. 473–75.

The union's position is that the city's charter does not set forth an explicit, dominant and well defined public policy; see *Watertown Police Union Local 541* v. *Watertown,* supra, 210 Conn. 339–40; the violation of which would require that the arbitral award be vacated. Our Supreme Court has held that an arbitral award that seeks to compel a city to comply with the terms of an agreement that clearly violates the city's charter is

against public policy, and that such an award is illegal and unenforceable. *Waterbury Teachers Assn.* v. *Furlong*, 162 Conn. 390, 424–25, 294 A.2d 546 (1972).

We therefore conclude, in the case before us, that the city's charter is a legally sufficient source of a public policy on which the arbitral award could be vacated.

## B

The union also argues that the court improperly relied on *Norwalk* v. *Board of Labor Relations*, supra, 206 Conn. 449. Specifically, the union claims that *Norwalk* is distinguishable because it concerned an administrative appeal of a state. board of labor relations decision, not an application to vacate. The union also points out that *Norwalk* concerned a party's alleged failure to comply with a grievance settlement in violation of General Statutes § 7-470, whereas in the present case the city had to prove that the award was defective under General Statutes § 52-418 or that it violated a specific public policy. In *Norwalk*, our Supreme Court held that an unauthorized settlement agreement violated the public policy of the city charter. *Norwalk* v. *Board of Labor Relations*, supra, 453. The union makes much of the fact that *Norwalk* involved a different statute, but the distinction is one without a difference. The primary issue in both cases is whether a city charter can provide an explicit, dominant and well defined public policy sufficient to void an arbitration award. That question was decided in the affirmative almost thirty years ago in *Waterbury Teachers Assn.* v. *Furlong*, supra, 162 Conn. 424–25.

" 'Where the municipal charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that procedure must be followed for the act to be lawful.' *Caldrello* v. *Planning Board*, 193 Conn. 387, 391, 476 A.2d 1063 (1984). '[A]ll who contract with a municipal corporation are charged

with notice of the extent of . . . the powers of municipal officers and agents with whom they contract, and hence it follows that if the . . . agent had in fact no power to bind the municipality, there is no liability on the express contract . . . .' 10 E. McQuillin, [Municipal Corporations (3d Ed. Rev.)] § 29.02, pp. 199–200. 'The city attorney cannot go beyond the powers conferred upon him. . . . Generally he has no authority to compromise claims, so that such an unauthorized compromise is not binding on the municipality.' 3 E. McQuillin, supra, § 12.52a, p. 210. . . . ' "[E]very person who deals with [a municipal corporation] is bound to know the extent of its authority and the limitations of its powers . . . ." ' *John J. Brennan Construction Corporation, Inc.* v. *Shelton,* 187 Conn. 695, 704, 448 A.2d 180 (1982)." *Norwalk* v. *Board of Labor Relations,* supra, 206 Conn. 452–53.

### III

The union's third claim is that the court improperly concluded that the charter provision that required the board of finance to consider all claims against the city and to approve such claims it deems valid applied to the present case and that it was not followed. We disagree.

The following additional facts are necessary for our review of this claim. During the hearing on whether there was a legal basis to vacate the award, the court asked the city's counsel for the relevant provision of the charter that it relied on to support its claim that Graves lacked authority to bind the city. The city's counsel confirmed that the city was relying on a specific charter provision to support its position, and read the following charter provision into the record. " 'Meetings; duty to pass on claims and accounts against the city. It shall be the duty of said board [of finance] to hold a regular weekly meeting on some day to be fixed by said board, and the mayor may call a special meeting at

any time, on reasonable personal notice to the members thereof . . . . *It shall be the duty of said board to carefully examine and consider all claims and accounts against the city submitted for its approval and to approve by the signatures of a majority of its members such claims or accounts as it finds to be justly due. . . .'* Section 56 of the New Haven charter. . . . That provision was found under 8491." (Emphasis added.) The city's counsel provided the court with a copy of the charter.[3]

In its memorandum of decision, the court determined that the grievance filed by the union constituted a claim against the city under the charter provision and concluded: "Thus, the purposes of the charter were thwarted—the city was deprived of the opportunity to approve a claim after determining its validity. The city's taxpayers were deprived of the protection contained in their charter. Further, the court finds nothing in the charter which would give counsel the authority to bind the city without its approval. Since the procedure required by the charter was not followed, the award violated the public policy enunciated in the charter."

First, we note that the union has provided no legal analysis of its claim that the court improperly concluded that the charter provided a sufficient public policy basis to warrant vacating the award. The union also has not provided any law to dispute the court's conclusion that the union's grievance is a claim pursuant to the charter. We do not review claims absent law and analysis. *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, 42 Conn. App. 426, 439 n.12, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996).

The union also seems to claim that there was no evidence before the court of a specific applicable char-

---

[3] Counsel for the union objected to the introduction of the charter at the hearing because it was not mentioned in the city's brief.

ter provision that established a public policy definite enough to justify vacating the award. The union further claims that there was no evidence before the court by which it could determine that Graves did not have authority to bind the city to the board's resolution. On the basis of our review of the record, we conclude that neither of these claims has merit.

With respect to the claim that there was no evidence of an applicable charter provision before the court, the record clearly demonstrates that the city's counsel read the relevant charter provision into the record and then provided the court with a copy of the city charter. Although the union objected to the city's giving the court a copy of the charter at the hearing; see footnote 3; the court did not rule on the objection during the hearing but gave the union an opportunity to respond.[4] If the union's claim is that the court should not have permitted the city's counsel to read the provision into the record, we disagree.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did. . . . *State* v. *Rogers*, 38 Conn. App. 777, 796, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996)." (Internal quotation marks omitted.) *State* v. *Hoffler*, 55 Conn. App. 210, 215, 738 A.2d 1145, cert. denied, 251 Conn. 923, 742 A.2d 360 (1999).

---

[4] We do not know whether the union responded, but that issue is of no matter.

The court could not decide in a vacuum whether a public policy existed to vacate the award. The charter was relevant to the issue of the existence of a public policy. "Evidence is relevant if it tends to establish a fact in issue or corroborates other direct evidence. . . . Rulings on such matters will be disturbed on appeal only upon a showing of a clear abuse of discretion." (Internal quotation marks omitted.) *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 185, 646 A.2d 195 (1994). The court did not abuse its discretion.

With respect to the union's claim that there was no evidence that Graves did not have authority to bind the city to the board's resolution, the pleadings alone demonstrate that the provisions of the charter were not followed. As this court said in *New Haven* v. *Local 884, Council 4, AFSCME, AFL-CIO*, supra, 44 Conn. App. 770, "the [city] took no steps to accept the results of the proposed resolution. On the contrary, the [city's] affirmative acts in pursuing litigation regarding the application to vacate the award and in refusing to comply with its terms demonstrate that it rejected the proposed settlement."

IV

The union's final claim is that the court abused its discretion by deciding the case without holding an evidentiary hearing to determine whether Graves lacked authority to bind the city to the settlement. We disagree because, as a matter of law, Graves lacked authority to bind the city.

"In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . *Glass* v. *Peter Mitchell Construction Leasing & Development Corp.*, [50 Conn. App. 539, 543, 718

A.2d 79, cert. granted, 247 Conn. 938, 723 A.2d 317 (1998) (appeal withdrawn July 6, 1999)]. Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds. . . . *Turk* v. *Silberstein*, 48 Conn. App. 223, 225–26, 709 A.2d 578 (1998)." (Internal quotation marks omitted.) *Rivera* v. *St. Francis Hospital & Medical Center*, 55 Conn. App. 460, 463–64, 738 A.2d 1151 (1999).

As we discussed in part III of this opinion, the city's charter provides that the board of finance must approve all claims against the city. All persons who contract with a municipal corporation are charged with notice of the extent of the powers of the municipal officers and agents with whom they contract, and the limitations of those powers. See *Norwalk* v. *Board of Labor Relations*, supra, 206 Conn. 452–53. The court properly determined, as a matter of law, that Graves lacked authority to bind the city and, therefore, an evidentiary hearing was not necessary.

The judgment is affirmed.

In this opinion the other judges concurred.