[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before the court is a dispute between Pedro Hostos and the Town of Wilton concerning whether the Hostos children have or do not have a right to attend the Wilton Public School.
The plaintiff, Pedro Hostos, was employed as a custodial worker by the Wilton public schools. As a benefit of his employment, the plaintiff's minor children were allowed to attend the Wilton public schools even though they are Bridgeport residents. In December 1996, the plaintiff suffered a work related back injury and filed a workers' compensation claim. The defendants accepted the plaintiffs claim that his injury was a compensable work related injury. Due to complications resulting from surgery, the plaintiff has not recovered sufficiently to be released to work. In May 2000, the defendants terminated the plaintiff on grounds that he alleges were pretextual and suspect, and in violation of General Statutes § 31-290a.[1] As a result of the plaintiff's termination the defendants also terminated certain benefits he received as a result of his employment, including the benefit of his children being allowed to attend the Wilton public schools on a tuition free basis. On August 28, 2000, the plaintiffs[2] filed a two-count complaint. In the first count they stated claims for discriminatory and/or retalitory termination pursuant to General Statutes § 31-290a, common law wrongful termination, fraud, and breach of contract. In the second count they stated a claim for breach of an oral settlement agreement which they alleged had resolved all of their claims.[3] On September 5, 2000, the defendants filed a motion to dismiss the first count of the complaint, which was granted on the ground that the alleged violations of §31-290a are currently pending before the workers' compensation commission.[4] That same day, the attorneys for the parties appeared before the court, Melville, J., and stipulated that, as to the second count, they had reached a partial agreement on the matter of the children's enrollment in the Wilton public schools.[5] Subsequently, on January 18, 2001, the plaintiff filed an amended complaint which, in accordance with the partial settlement agreement, does not include a claim for breach of an oral settlement agreement (which was in the second count of the original complaint), and does not include the request for injunctive relief. Furthermore, the defendants subsequently allowed the children to remain enrolled in the Wilton public school throughout the 2000-2001 school year, and the plaintiff paid the required $200 a month toward tuition.
On April 9, 2001, however, the Wilton board of education by letter CT Page 12775 notified the plaintiff that it "intends to commence the process of disenrolling Rafael Lee and David Hostos no later than Monday, April 23, 2001." The letter stated that "[g]iven that the Hostos family does not reside in Wilton, given that neither Mr. nor Mrs. Hostos are employed by the Wilton public schools, and given the fact that the Hostoses have clearly demonstrated that they have no intention of paying anywhere near the full amount of tuition to which they agreed, the Board intends to proceed with Rafael Lee's and David's disenrollment from the Wilton Public Schools."
On April 20, 2001, the plaintiff filed a motion for immediate hearing (#119), in which he prays the court to intervene to prevent the board from proceeding with the disenrollment, on the ground that the board's conduct is an intentional violation of the "court ordered agreement," and that it will inflict irreparable harm on the plaintiff's children.[6]
On April 30, 2001, the defendants responded by filing an objection (#120), in which they argue: 1) That the plaintiff failed to withdraw count two of the original complaint as agreed; 2) that the transcript of the September 5, 2000 in-court "colloquy" demonstrates that there is no "court ordered agreement"; 3) that after September 5, 2000, the plaintiff's wife, Carmen Hostos, executed a non-resident tuition agreement pursuant to which they are responsible for the payment of full tuition for their sons' enrollment in the Wilton public schools and that they have not paid the full tuition; 4) that disenrollment will not cause irreparable harm to the children; 5) that the plaintiff attempts to circumvent the requirements for obtaining injunctive relief; and 6) that the plaintiff's motion seeks to circumvent the administrative procedure whereby a parent may challenge the denial of school accommodations, set forth in General Statutes §§ 10-186 and 10-187,[7] and because the plaintiff has not exhausted these procedures the Superior Court lacks subject matter jurisdiction to hear the issue of the children's disenrollment by the board.[8]
The court, Skolnick, J., granted the plaintiff's motion (#119) for an immediate hearing on April 20, 2001, and on May 21, 2001, a hearing was held. At the hearing, the parties argued the following issues: 1) whether the in-court agreement of September 5, 2000, is valid, enforceable, and binding on the parties;[9] 2) whether the administrative proceeding by the Wilton board of education to disenroll the children may go forward; and 3) whether the court has subject matter jurisdiction to consider the children's enrollment in school by considering the in-court agreement.
Starting with the third issue, "[o]ur Supreme Court . . . has permitted the filing of separate actions against boards of education for breach of contract under limited circumstances." Drahan v. Board of Education, CT Page 1277642 Conn. App. 480, 491, 680 A.2d 316, cert. denied, 239 Conn. 921,682 A.2d 1000 (1996). Although a litigant may not invoke common law contract remedies in complete disregard of available administrative remedies; id.; where, as here, the parties voluntarily entered into a settlement agreement to resolve the issue of the children's enrollment before the board of education initiated the administrative procedure to disenroll the children under General Statutes § 10-186, it is counterintuitive to argue that the plaintiff disregarded or failed to exhaust available administrative remedies[10] "To the extent that the complaint alleged a breach of the agreement, the court [has] jurisdiction to hear this case." Cahill v. Board of Education, 187 Conn. 94, 103,444 A.2d 907 (1982). In the present case, the plaintiff moves the court to intervene to prevent the defendants' breach of the partial settlement agreement and to enforce the agreement. That agreement embodies a compromise, and the parties have each given up something they might have won had they proceeded with the litigation. Albert Mendel Son, Inc. v.Krogh, 4 Conn. App. 117, 122, 492 A.2d 536 (1985). In the agreement, the board of education promised that it would allow the plaintiff's children to attend Wilton public schools, during the pendency of the underlying claim before the workers' compensation commission, for $200 per month, instead of the full amount of tuition normally required of nonresident students.[11] This is a remedy which the plaintiff could not have received by pursuing the administrative remedies, which only would have allowed for the children to be enrolled if their residency was proven, or disenrolled if their nonresidency was proven. See General Statutes §10-186. If the latter, the student presumably could still remain enrolled in the same school as long as full nonresident tuition is paid monthly. Section 10-186 does not, however, give the board discretion to enroll a nonresident student for a payment of only $200 a month towards tuition. Therefore, the plaintiffs only remedy to enforce the partial settlement agreement was the court process. See Cahill v. Board of Education, supra, 187 Conn. 104; Saccardi v. Board of Education, 45 Conn. App. 712,716-17, 697 A.2d 716 (1997). Accordingly, the court finds, therefore, that it may properly assume jurisdiction.
Turning now to the first issue, the defendants question whether the in-court agreement of September 5, 2001, is valid, enforceable, and binding on the parties. They argue that it is not a "court ordered agreement."
Whether the September 5, 2000 agreement is a "court ordered agreement" is not determinative. "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. Audubon Parking Associates Ltd.Partnership v. Barclay Stubbs, Inc., 225 Conn. 804, 811, 626 A.2d 729
(1993). Even when the terms of an accord are not placed on the record in CT Page 12777 open court, the court has the ability to summarily enforce the terms of an out of court settlement agreement, particularly in a case where the defendants have already complied with its terms. See Presidio CommonsAssn. v. Bastedo, Superior Court, judicial district of New Haven at New Haven, Docket No. 435656 (April 30, 2001, Pittman, J.); Dap FinancialManagement Co. v. Mor-Fam Electric, Inc., 59 Conn. App. 92, 755 A.2d 925
(2000); Montgomery v. Smith, 40 Conn. Sup. 358, 499 A.2d 444 (1985). In the present case, the terms of the partial agreement were put on the record in open court, and they are clear and unambiguous. The plaintiffs agreed to withdraw the second count of the complaint, in which they had stated a claim for breach of an oral settlement agreement, and their request for injunctive relief, and pay $200 a month towards tuition. In return, the defendants promised to let the plaintiffs' children attend Wilton public schools, during the pendency of the underlying claim before the workers' compensation commission.[12]
At the hearing on the plaintiff's motion, the defendants argued that the agreement was not that the plaintiff would pay only $200 per month for tuition. "The test of disputation, however, must be applied to the parties at the time they entered into the alleged settlement." DapFinancial Management Co. v. Mor-Fam Electric, Inc., supra,59 Conn. App. 97. In the present case, no dispute existed between the parties at the time they reached a settlement, as the court transcript shows. Furthermore, even if the plaintiff was required to pay full tuition each month on the basis of some other arrangement,[13] the fact remains that the partial agreement at issue here provided for $200 a month, and it is undisputed that the plaintiff paid, and the defendants accepted, that amount each month.[14]
In the present case, it is undisputed that, subsequent to the September 5, 2000 agreement, the defendants allowed the plaintiff's children to remain in Wilton public schools throughout the 2000-2001 school year, and accepted the $200 towards tuition which the plaintiff paid for each month of that school year. "A municipality may become bound to an agreement despite its agent's lack of authority, by a subsequent ratification of the agreement. Ratification by the municipal body with power to do so has the equivalent effect of a prior authorization and binds the municipality just as though authority had been given initially." (Internal quotation marks omitted.) New Haven v. Local 884, Council 4, AFSCME, AFL-CIO,44 Conn. App. 764, 770, 694 A.2d 417, cert. denied, 241 Conn. 915,696 A.2d 984 (1997). Such ratification occurs when the municipal body takes steps to accept the results of the proposed resolution. Id. The acts of the defendants in the present case accord with the terms of the partial settlement agreement of September 5, 2000, and by these acts the defendants accepted the results of that agreement, ratified it, and became bound thereby. See id.; New Haven v: Local 884, Council 4,CT Page 12778AFSCME, AFL-CIO, 58 Conn. App. 746, 749, 755 A.2d 885, cert. denied,254 Conn. 929, 761 A.2d 752 (2000). "When informal settlements are achieved they are considered binding." Albert Mendel Son, Inc. v.Krogh, supra, 4 Conn. App. 122. Accordingly, the court concludes that the September 5, 2000 partial settlement agreement is a valid, enforceable and binding agreement.
As to the second issue, the defendants argue that, even if the agreement was enforceable, the plaintiff breached it first by not withdrawing the second count of the original complaint, and therefore, the defendants' subsequent initiation of administrative proceedings to disenroll the children does not violate the partial settlement agreement, because it is no longer binding on them.
The second count of the plaintiffs' original complaint was based on their claim that the defendants breached an oral settlement agreement. In paragraph fifteen thereof, the plaintiff alleged that "[t]he agreement was that plaintiffs children would be allowed to attend Wilton public schools until both graduated from high school, and further, plaintiffs' medical benefits would be maintained without cost for a period not to exceed 18 months or until the plaintiff qualified for Social Security Disability benefits, which ever event occurs first." In paragraph sixteen of the same count the plaintiff alleged that on or about August 16, 2000, he was advised "that despite previous representations and verbal agreements, the two Hostos children would not be allowed to attend school commencing August 28, 2000 and that the defendants were breaching its agreement." The request for relief included injunctive relief in the form of a temporary restraining order and temporary and permanent injunctions.
The plaintiffs amended complaint includes contractual claims and claims sounding in contract in counts two to six. None of those counts, however, are based on factual allegations that relate to an oral settlement agreement that formed the basis of the second count of the original complaint. Count two of the amended complaint deals with a written agreement, which is presumably the plaintiff's employment agreement. Count three deals with an implied agreement based on representations the defendants made to the plaintiff during the course of his employment. Count four, a claim for promissory estoppel, is based on promises the defendants made to the plaintiff during the course of his employment relating to compensation, benefits and termination processing and procedures. Count five presents a claim for breach of an implied covenant of good faith and fair dealing, based on the alleged breach of the express and/or implied employment contract. Finally, count six is a claim for negligent misrepresentation with regard to representations made by the defendants to the plaintiff during the course of his employment regarding certain compensation and other benefits. None of the above CT Page 12779 counts have anything to do with the breach of an oral settlement agreement allegedly entered into after the plaintiffs employment was terminated by the defendants.
Furthermore, the plaintiff has also withdrawn the factual allegations they included in support of the original second count and the accompanying injunctive relief. Thus, paragraphs 3, 14, 15, 17 and 18 of count one of the original complaint, as well as the request for injunctive relief, are absent from the amended complaint. In short, the defendants have not presented evidence that the plaintiff breached the partial settlement agreement. On the other hand, the defendants' subsequent initiation of administrative proceedings pursuant to §10-186 to disenroll the children constitutes, or would constitute, a breach of a valid, enforceable, and binding agreement.
"When parties agree to settle a case, they are effectively contracting for the right to avoid a trial. The asserted right not to go to trial can appropriately be based on a contract between the parties." (Emphasis in original; internal quotation marks omitted.) Audubon Parking AssociatesLtd. Partnership v. Barclay Stubbs, Inc., supra, 225 Conn. 812. In the present case, the partial settlement agreement of September 5, 2000, erased all claims under General Statutes § 10-186 related to the Hostos children's school attendance while the underlying claim before the workers' compensation commission is pending. "There thus existed no res over which the [board of education] had jurisdiction. Because of this lack of jurisdiction, the [board of education] had no power to [initiate the disenrollment process of the children pursuant to § 10-186]."Rondini v. Tectonic Industries, ___ Conn. Workers' Comp.Rev.Op. ___, 1231 CRD-6-91-5 (1992).
Accordingly, the court orders the following: that the defendants shall immediately refrain from instituting, and shall immediately terminate any administrative proceeding pursuant to General Statutes § 10-186 to deny school accommodations to the Hostos children; that, in case such proceedings have already concluded, and notwithstanding the outcome of such proceedings, the defendants shall let the children have immediate access to, and attend, Wilton Public Schools; and that the parties shall abide by the partial settlement agreement of September 5, 2000, during the pendency of the underlying claim before the Workers' Compensation Commission.
Skolnick, Judge.